DRUMMOND (ALDRIDGE v.). See Case No. 156.

DRUMMOND (BLANE v.). See Case No. 1,-531.

DRUMMOND (THATCHER HEATING CO. v.). See Case No. 13,865.

DRURY (BATES v.). See Case No. 1,100.

## Case No. 4,095.

### DRURY et al. v. EWING et al.

[1 Bond, 540.][1]

Circuit Court, S. D. Ohio. Oct. Term, 1862.

INJUNCTION— ATTACHMENT FOR CONTEMPT—COPYRIGHT—FOR WHAT GRANTED—INFRINGEMENT.

1. On a motion for an attachment for a contempt in violating an injunction, the original decree can not be impeached, except for fraud, or defect of jurisdiction in the court, as to the subject matter of the suit.

2. The chart copyrighted to the complainant's wife, as published on a single sheet, containing diagrams representing a system of taking measures for, and cutting ladies' dresses, with instructions for its practical use, is a "book" within the meaning of the first section of the act of congress of February 3, 1831 [4 Stat. 436], and is entitled to the protection of the statute.

[Cited in Bullinger v. Mackey, Case No. 2,-127; Baker v. Selden, 101 U. S. 107; Harper v. Shoppell, 26 Fed. 519. Distinguished in Munson v. Mayor, etc., of New York, 3 Fed. 338.]

3. In deciding whether a publication is an infringement of one for which a previous copyright had been obtained, the true inquiry is, whether the work alleged to be a piracy is substantially the same as that copyrighted; and mere colorable variations intended to evade

liability for an infringement, will not destroy the legal identity of the two.

[Cited in Fishel v. Lueckel, 53 Fed. 500.]

4. If a material part of the copyrighted publication is used, though the alleged piratical work may be in some respects an improvement, it is still an infringement of the exclusive right of the author.

5. The substantial identity of the system of the defendant's wife with that copyrighted by the complainant being established by the evidence, the former is adjudged guilty of a violation of the injunction in using and selling her guide, and is ordered to surrender all the copies in her possession or within her control, as also the plate on which it is printed, to the clerk of this court, within twenty days, and to pay the costs of this proceeding.

[This was a bill by Jonas Drury and Lavinia Drury, his wife, against John Ewing and Sarah C. Ewing, his wife, and others, for infringement of copyright.]

Lincoln, Smith & Warnock, for complainants.

A. J. Pruden, for defendants.

OPINION OF THE COURT. The bill in this case was filed June 28, 1860. The complainants aver that the said Lavinia Drury is the "authoress and proprietress" of a chart entitled, "The ladies' chart for cutting dresses and basques for ladies, and coats, jackets, etc., for boys," a copy of which was duly deposited in the office of the clerk of the district court of the United States for the southern district of Ohio, April 25, 1859, by which the exclusive right of publishing, using, and vending the same was secured to her, by the act of congress on that subject, for the period of twenty-eight years. The bill further alleges that the said Sarah C. Ewing, in conjunction with her husband and others, has caused to be published and sold a large number of said charts, and was then publishing and selling the same, without any license or authority from the said Jonas and Lavinia Drury, and in violation of their rights and greatly to their injury. The bill prays for an injunction to restrain the defendants from any further publication of said charts, and for other relief. A provisional injunction in accordance with the prayer of the bill was ordered July 2, 1860. The answer of Ewing and wife was filed September 3, 1860. The answer admits, in substance, the sale of Mrs. Drury's charts, but alleges they were sold or used under an arrangement between the parties, by which Mrs. Ewing was constituted the agent of Mrs. Drury, and as such was authorized to vend and use the charts. And the defendants deny that they have in any way infringed the exclusive right of the complainants by such sale and use. The case came on for hearing on the bill, answer, exhibits, and proofs, January 21, 1861, and resulted in a decree for the complainants, and the award of a perpetual injunction against the defendants. On May 10, 1862, upon a proper showing by the complainants, a rule was entered

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

against Ewing and wife, requiring them to show cause why they should not be attached as for a contempt in violating the injunction. This rule was duly served, and the defendants, Ewing and wife, appeared and in response thereto filed an answer denying that they had violated the injunction, or had intentionally disregarded the order of the court, and praying to be discharged from the rule. In the progress of the investigation growing out of the motion for an attachment, it was made to appear that in September, 1860, Ewing and wife had deposited, in the office of the clerk of the district court of the United States for the eastern district of Missouri, a copy of what is described as "the ladies' guide" for taking the measures and cutting garments for females, of which Mrs. Ewing claimed to be the authoress or inventress, and for which she had thus secured a valid copyright. It was also proved on such hearing, and not controverted by the defendants, that Mrs. Ewing had printed a large edition of her guide, and that she had sold many copies of the same after the service of the injunction upon the defendants. In resisting the application for an attachment, it was assumed by the counsel of the Ewings, that the guide which they had copyrighted in Missouri was substantially different from Mrs. Drury's, and that the use and sale of them did not therefore involve a violation of the injunction or any infringement of her rights. This posture of the application for an attachment presented the question of the identity of Mrs. Drury's chart and Mrs. Ewing's guide. And, upon this issue, a great mass of testimony has been taken by these parties, and, after a protracted hearing and very elaborate arguments, the question has been submitted for the action of the court. In this connection, it should be stated, that in addition to the issue of identity if the court should adjudge it to be established by the testimony, it is strenuously urged by counsel that the motion for an attachment can not be entertained, and the Ewings held to be guilty of a contempt, for the reason that the copyright of Mrs. Drury is a nullity as not being a legitimate subject of a copyright within the scope and intention of the act of congress.

This point first claims the attention of the court. And in relation to it, it is obvious to remark, that whatever ground there may have been for contesting the validity of the copyright on the hearing of the original case, it is now too late to do so. The defendants are clearly concluded by the admissions of their answer, and by the facts adjudged true by the decree of the court, and which could properly have been contested at the hearing on the merits. The bill, as before noticed, contains the distinct averment that Mrs. Drury is the authoress and proprietress of the chart copyrighted to her, and that the exclusive right to publish, use, and vend the same vested in her. These allegations are not controverted or put in issue by the answer. They are, at least by the strongest implication, admitted to be true. The answer does not allege the invalidity of Mrs. Drury's copyright, either on the ground that it is not within the act of congress, or that it was not her original invention. Indeed, these points are conceded in the answer, as in that, the Ewings rest their vindication of the sales of the charts up to that time, on the ground that Mrs. Ewing was the agent of Mrs. Drury. This is wholly inconsistent with the position now taken, that her copyrighted charter is a nullity in law. This point not having been brought to the notice of the court at the hearing, it was clearly not its duty, sua sponte, to pass upon it, even if there had been doubts as to the validity of the copyright. The court therefore found the facts alleged in the bill to be sufficiently verified, and entered a decree to that effect. The decree assumes that Mrs. Drury's copyright was valid, and that she was entitled to protection against its infringement. It also finds that the defendants had so violated that right as to justify an order for an injunction, and the award of damages in favor of the complainants in accordance with the statute. In this state of the case no proposition can be clearer than that the defendants, upon the pending motion, can not impeach the decree thus entered. Several entire terms of the court have intervened since its entry, and it would be an unheard of exercise of jurisdiction, in this collateral way, to revise and reverse it. No court will do this in a proceeding looking only to the enforcement of the decree, except on a clear showing of fraud in its rendition, or a want of jurisdiction as to the subject-matter of the suit. There is no pretense or allegation of fraud in the decree, nor is there a doubt of the jurisdiction of the court in the suit. This is given in such express terms by the statute, as to leave no room for controversy. If there was any error in the facts found by the decree, or the legal conclusions of the court, the obvious and only remedy was an appeal to a higher court having ample power to revise and reverse the decree. This principle is so well settled as scarcely to need the citation of authorities for its support. It has been repeatedly affirmed by this court, and distinctly held by the supreme court of the United States. [Voorhees v. Jackson] 10 Pet. [35 U. S.] 474; [Huff v. Hutchinson] 14 How. [55 U. S.] 588.

But it is by no means clear that the objection now urged to the validity of the complainant's copyright could have been sustained, if it had been presented in the proper way and at the proper time. The point made by the defendants' counsel is, that the chart copyrighted to Mrs. Drury is neither a "book," nor a "chart," nor a "print," within the terms of the act of congress, and therefore not within its protection. Upon this

point, no American authorities have been referred to, nor am I aware that it has been decided in this country. In the English courts I know of but one case in which it has been fully considered. This will be presently referred to as having a direct bearing on the question adverted to. Section 1 of the act of congress of February 3, 1831 (4 Stat. 436), secures to the author of any book or books, map, chart, or musical composition, or to any one who shall invent, design, etch, engrave, work or cause to be engraved, etched, or worked from his own design, the exclusive right of printing, reprinting, publishing, and vending the same for the term of twenty-eight years, by complying with certain requirements of the statute. The question presented is, whether the chart for which Mrs. Drury has procured a copyright under the statute falls within any of the foregoing designations. I do not propose to consider this question at any length. As a first impression, from an inspection of the chart, the mind repudiates the conclusion that it is a "book;" and when the point was first suggested, it occurred to me it would require a forced construction of the statute to bring it fairly within the meaning of that term. The chart as printed and published for use is contained on one large sheet, representing a series of diagrams, interspersed with printed instructions as to the mode of using them in taking measurements for and cutting certain parts of ladies' dresses. As necessary to the practical use of the diagrams, they are pasted on thick paper or pasteboard, corresponding with and showing precisely the forms of the diagrams. The exact dimension and form of every part of the garment intended to be cut is indicated by a series of numerals placed along the outer edges of the diagrams thus arranged, and by means of dots or marks at the proper figures, the exact size and course of each section of the garment is ascertained with mathematical precision.

Now, it may well be conceded, that the chart as printed on the sheet, or as pasted in parts for practical use, is not a "book," according to the more popular sense of the word. But, in giving effect to the statute according to its obvious design and spirit, I can see no necessity for restricting the word to a volume. The origin and derivation of the word "book" does not justify this restricted sense. Without intending to make any show of learning on this subject, or attempting a critical investigation, I may remark what is well known, that the Latin word "liber"—book—had no reference to the collection of writings in a volume, but primarily signifies the bark of a tree. Webster, in his dictionary, says our word "book" is derived from the Saxon, "boc," meaning "a beech-tree;" and in other languages of the north of Europe, it has the same derivation. The supposition is, that either the bark of the beech, or what is more probable,

thin polished plates of the wood of that tree, were used for writing. It is a fact well established that the Chinese, before the discovery of the art of making paper, used the latter mode for that purpose. It is also well known to readers of the Bible and other ancient writings that in referring to books the collection of literary materials in a volume is not intended. The papyrus was first used for writing, and at a later period the skins of animals made into parchments; but they are called "books," though the manuscripts were in the form of rolls or loose leaves, unbound, and not in volumes, according to the modern sense of the term. But I should certainly have hesitated in adopting this view as a judicial conclusion, if it was not sustained by an authority entitled to high respect. The English courts, after the fullest investigation, have decided this question in a case to which I will now refer. The statute of 8 Anne, on the subject of copyrights, enumerating in section 1 the works intended to be protected by it, contains the words "book or books" precisely as in our statute. In the case of Clementi v. Golding, 2 Camp. 25, the court held that the form of the publication was not material in determining whether it was or was not a book, within the meaning of the statute. That was a suit for a piracy in reprinting and selling a song, which had been published on a single sheet, and in that form copyrighted. The objection was made, that it was not a "book" entitled to the protection of the statute. Lord Ellenborough, contrary to his opinion in a previous case, overruled the objection and directed the jury to return a verdict for the plaintiff, with leave to move for a new trial. He is reported to have said: "I do not see at present why a composition printed on a single sheet of paper should not be entitled to the privileges of the statute. * * *" He adds: "I was at first startled at a single sheet of paper being called a 'book,' but I was afterward disposed to think it might be so considered within the meaning of the act of parliament, and when the matter came before the court, the other judges inclined to the same opinion." After the argument of the motion for a new trial, the reporter adds: "The judges seemed unanimously of opinion that it could not depend on the form of the publication, whether it were entitled to the privileges of the statute or not; that a composition on a single sheet might well be a 'book' within the meaning of the legislature, and that the verdict of the jury ought not to be disturbed." See same case, 11 East, 244 (new Ed. vol. 6, 125); also case of Hime v. Dale, decided in 1803, referred to 2 Camp. 27, note; Curt. Copyr. 105 et seq.; 2 Eden, Inj. 322.

It will be seen by reference to the case of Clementi v. Golding [supra] that the question was very fully and carefully considered by the full court. No case has been referred to, and I am not aware there is any in

which the doctrine then settled has been reconsidered or overruled by the English courts. And the construction of the statute of Anne, on the point under consideration, may be regarded as law in England. And I can not perceive on what ground the principle can be impugned as against good sense and reason. I am, therefore, inclined to adopt the liberal construction given by the English courts to their statute, and to hold that Mrs. Drury's chart is within the protection of our statute. She could doubtless have given it to the world in a succession of sheets, bound together and constituting a volume, but it is obvious that the chart for practical purposes is more easily understood, and therefore more useful, printed on a single sheet large enough to exhibit all the diagrams at one view. I can not perceive why her rights as an authoress or inventress should be prejudiced by this form of publication. If the chart, as the court is bound, for reasons before intimated, to presume, is original with her—the product of thought and mental toil—her claim is by no means destitute of merit, and she is justly entitled to all the benefits which the law confers. It is clearly no objection to the validity of her copyright, that her production does not claim a standing as a work of great literary merit. The statute does not make this a necessary element of a legal copyright; and it is well known there are works of great practical utility, having no pretension to literary merit, which are yet within, not only the words, but the scope and design of the statute. Adopting this view of the law, it is not necessary to decide whether Mrs. Drury's copyright can be sustained as a "chart" or "print." These words are used in the statute as legitimate subjects of a copyright, and it would not imply a very forced construction to hold that the copyrighted work of Mrs. Drury is included in one or both of these terms. The authorities, I think, would fully sustain such a conclusion.

The only question which remains is, whether the complainants' chart and Mrs. Ewing's guide are legally identical. If they are so, it follows necessarily that the use and sale of the latter is an infringement of Mrs. Drury's exclusive right and a violation of the injunction. And here the true inquiry undoubtedly is, not whether the one is a fac simile of the other, but whether there is such a substantial identity as fairly to justify the inference that in getting up the guide, Mrs. Ewing has availed herself of Mrs. Drury's chart and has borrowed from it its essential characteristics. And the decision of this question is in no way affected by the fact—if conceded to be the fact—that the guide is in some respects an improvement of and of superior utility to the chart of the complainants. This would confer no right to appropriate and use the prior invention or discovery of Mrs. Drury. The law on this subject is stated by Judge McLean, Story v. Hol-

combe [Case No. 13,497], as follows: "The same rule of decision should be applied to a copyright as to a patent for a machine. The construction of any other machine which acts on the same principle, however its structure may be varied, is an infringement of the patent. The second machine may be recommended by its simplicity and cheapness, still if it act on the same principle of the one first patented, the patent is violated." And in the same case, the learned judge asserts the principle strongly, that in the case of a copyright, if the work alleged to be a piracy is of a character to render the original "less valuable by superseding its use in any degree, the right of the author is infringed." In the case of Folsom v. Marsh [Id. 4,901], it is decided that it is "not necessary to constitute an evasion of a copyright, that the whole of a work should be copied, or even a large portion of it, in form or substance. If so much is taken that the value of the original is sensibly diminished, or the labors of the original author substantially, to an injurious extent, appropriated by another, that is sufficient in point of law to constitute a piracy pro tanto. The entirety of the copyright is the property of the author, and it is no defense that another has appropriated a part, and not the whole of any property." To the same effect are the views of Judge Story. in the case of Emerson v. Davies [Id. 4,436]. He says: "To amount to an infringement, it is not necessary that there should be a complete copy or imitation in use throughout, but only that there should be an important and valuable portion, which operates injuriously to the copyright of the plaintiff." In the same case the learned judge, in defining a piracy of a copyright, after a reference to the English authorities, says: "I think it may be laid down as the clear result of the authorities in cases of this nature, that the true test of piracy or not, is to ascertain whether the defendant has in fact used the plan, arrangements, and illustrations of the plaintiff as the model of his own book, with colorable alterations and variations only, to disguise the use thereof." Judge Woodbury, on this point says, the true inquiry in these cases is, "whether the book of the defendant, taken as a whole, is substantially a copy of the plaintiff's; whether it has virtually the same plan and character throughout, and is intended to supersede the other in the market with the same class of readers and purchasers by introducing no considerable new matter, or little or nothing new except colorable deviations." Webb v. Powers [Case No. 17,323]. To the same effect are the numerous English decisions on this point. 2 Mylne & C. 740; 30 Eng. Law & Eq. 461; 36 Eng. Law & Eq. 321.

These authorities seem to be decisive of the point under consideration. And the single inquiry in this case therefore is, whether there is a substantial identity as between the chart copyrighted to Mrs. Drury and the guide used and sold by Mrs. Ewing. On this

issue, I shall not attempt a critical notice of the mass of testimony introduced on the hearing of the present motion. It is to be regretted that under the impulse of their heated passions and intemperate zeal, these excited females have put themselves to unnecessary trouble and expense in taking depositions on the question of identity. It lies within narrow limits and presents no great difficulty in its solution. It is to be borne in mind that Mrs. Ewing does not allege, and has not proved, that she is the inventress or authoress of the system copyrighted to her; nor does she deny in her original answer, nor does she now deny, that Mrs. Drury's chart is the basis of her guide. Her claim is simply that she has so far varied from and improved the chart as to constitute her guide an original work, and that, therefore, it is no infringement. But it is obvious from inspection that the two embody substantially, if not literally, the same principle. The diagrams in each are essentially the same in form, dimensions, etc., and have the same arrangement of numerals. It is true, the different scales or rules for taking measurements are designated by names differing in the guide from those used in the chart, but this does not destroy the identity of the two. In practice they produce the same curves or forms for the same identical purpose. The device of Mrs. Ewing in placing on what she calls the back scale one number higher than on the front scale, thus making a seeming difference between her plan and that of Mrs. Drury's, can not affect the question of legal identity. This clearly involves no change of principle. And the same remark applies to the claim of a want of identity, on the ground that Mrs. Ewing's plan as alleged, requires five measurements, whereas Mrs. Drury provides for three only. The mere increase of the number of measurements does not constitute an essential difference in the two plans. But it is by no means clear, that Mrs. Ewing, in her system as copyrighted, requires more than the three measurements. The weight of evidence well justifies the conclusion that until this controversy arose, in practice three only were used, and that the subsequent addition of the two measurements, was an afterthought resorted to for an obvious purpose.

But there is one fact that seems wholly conclusive on this question of identity, and dispenses with the necessity of a minute inquiry into the alleged discrepancies between the two plans. Some nine or ten witnesses, practical and intelligent dressmakers, well acquainted with the theory and practice of taking measurements, and cutting dresses upon the plan of these parties, testify that the two are substantially the same, and in practice produce the same result. Some of these witnesses swear they have cut dresses by both plans, and that when the directions of each are strictly pursued, the results are substantially the same. One witness with great apparent candor and intelligence states, that by an actual experiment with the two plans, when he dropped the surplus number on the back scale of Mrs. Ewing, the measurements were precisely identical, and that when that number was used there was but a trifling difference. Such an experiment affords an unerring test of truth, and if the witness is credible, the force of the fact stated by him can not be overcome by the speculative opinions of any number of witnesses testifying adversely to him.

Without noticing other material discrepancies between the chart of Mrs. Drury and Mrs. Ewing's guide, I am led to the conclusion that they are essentially the same, within the scope of the authorities to which I have referred. Mrs. Ewing has, with some adroitness, so arranged and transposed some parts of Mrs. Drury's diagrams as to present to the unexperienced eye the impression that they are dissimilar, but in doing this she has utterly failed to prove that there is any difference in the principle of the two. There is, also, a substantial identity between the printed directions and instructions accompanying the chart and the guide. True, the words and sentences used by Mrs. Ewing are not the same as those used by Mrs. Drury, but they are of the same import, and intended for the same purpose. In this remark, I do not forget that it is strenuously urged by the counsel for the complainants that what is designated by Mrs. Ewing as her third pupil's instruction is more full and minute than those connected with the chart, and so far unlike them. It is enough to say, in reference to this, that the evidence fully warrants the conclusion that these constituted no part of the rules or instructions as claimed by Mrs. Ewing, and copyrighted to her in Missouri. They have been appended recently with the obvious purpose of negativing the identity of the two plans. It is another evidence of the consciousness of Mrs. Ewing, that something was needed to avoid the otherwise inevitable conclusion, that in getting up her guide she was interfering with and pirating on the prior exclusive right of Mrs. Drury. It can not be doubted that she has adopted all the essential parts of Mrs. Drury's system, and that so far as there are any apparent alterations they are colorable and evasive. It must be conceded that Mrs. Ewing's course does not commend her to the favorable consideration of a court of equity. She seems to have taken a dishonorable advantage of her position as the agent of Mrs. Drury, with the expectation of pecuniary benefits, to which she was neither morally nor legally entitled. Her intelligence and adroitness, as developed throughout this controversy, repel the inference that she acted in ignorance of the fact that she was invading the just rights of the complainants. And when by the decree of this court an injunction was granted to restrain her from the further sale and use of her guide, it was a duty of which she could

not have been ignorant, to respect and obey it. She has willfully violated the injunction, and the complainants, as they had a right to do, have asked for and obtained a rule to show cause why she should not be dealt with as for a contempt of court. No sufficient showing against such a judgment has been made, and I can not do otherwise than find her guilty of the alleged contempt.

The only embarrassment on the part of the court arises from the difficulty of determining what order shall now be made in the case. It is necessary that the supremacy of the law should be vindicated, and the rights of the complainants protected as far as practicable. To this end, it is unquestionably competent for the court to order the imprisonment of Mrs. Ewing, as a punishment for the contempt. But in the case of a female, I am exceedingly reluctant to make such an order. And if any assurance can be given that there will be no repetition of the offense, and that the rights of the complainants will hereafter be respected, I will not now adopt that stringent course. For the present, with the intimation that such future action, as circumstances may require, will be taken by the court, it is now ordered that the defendants, Ewing and his wife, surrender to the clerk of this court, within twenty days, all the published copies of the guide in their possession, or within their control, together with the plate or plates on which they are printed; and also that within that time they pay the costs of this proceeding.