Let findings be prepared in accordance with these views, and settled on five days' notice.

## UNITED STATES CIRCUIT COURT.

### HARPER *et al.* agt. SHOPPELL.

*Copyright—What is not an infringement.*

The unauthorized reproduction and sale of a copy of a cut from a copyrighted book or weekly paper is not an infringement upon such copyright.

*February,* 1886.

*Bangs & Stetson,* for plaintiffs.

*J. W. Hawes,* for defendant.

WALLACE, *J.*—The plaintiffs sue at law for an infringement of copyright, and the case has been tried by the court, a jury having been waived. The defendant has not intentionally infringed the plaintiffs' rights, and therefore nominal damages only are claimed. The conceded facts are as follows: The plaintiffs are the proprietors of *Harper's Weekly,* a copyrighted illustrated newspaper, published weekly, and in March, 1873, they published in that newspaper an impression of a cut entitled " Getting Married, Keeping House," which formed a prominent and considerable part of the newspaper. The cut was made and designed by one Reinhart, a citizen and resident of the United States, who sold it to the plaintiffs. They have never

Harper *et al.* agt. Shoppell.

parted with the original cut or given permission to the defendant or any other person to reproduce it. The defendant purchased a copy of the cut from a third person in ignorance of the plaintiffs' rights, from which an electrotype plate was made and sold by him to the proprietor of the *New York Illustrated Times*, who published an impression in the issue of that newspaper in September, 1882. It is assumed that Reinhart had not allowed this copy to be made before he sold the cut to the plaintiffs. The only question in the case is whether the unauthorized reproduction and sale of a copy of the cut by the defendant was an infringement upon the plaintiffs' copyright. The copyright of the plaintiffs' newspaper was a copyright of a book within the meaning of the copyright laws.

A copyrighted song printed upon a single sheet was held to protect as "a book," under the English statute of VIII. Anne, in *Clementi* agt. *Golding* (2 *Camp.*, 25). This decision was approved and followed in two cases arising under our copyright statutes, in which it was held that a book within these statutes is not necessarily a book in the ordinary and common acceptations of the word, but may consist of a single sheet as well as of a number of sheets bound together (*Clayton* agt. *Stone*, 2. *Paine*, 382; *Drury* agt. *Ewing*, 1 *Bond*, 540; see also *Folsom* agt. *Marsh*, 2 *Storey*, 100). The plaintiffs might have copyrighted the cut as an independent subject of copyright. They did not choose to do so. So also they could have copyrighted each poem or song or editorial composition of their newspaper. If they had done this a reproduction of the copyrighted thing would have been piracy, however innocent the defendant might have been of intentional wrong. They preferred to copyright their newspaper and secure protection for it as an entire work. The cut was a legitimate part of the protected property as much so as the poems or editorial articles. The pictorial illustrations are one form of language employed by an author to express his ideas, and when embodied in a book are as much a component part of it as the printed text. But they did not thereby copy-

right the cut. The statute not only makes provision for copyrighting charts, prints, cuts, engravings, &c., but makes a distinction between infringement of a book and of a cut, engraving, &c. A book is infringed by printing, publishing, importing, selling or exposing for sale any copy of the book (*sec.* 4964, *R. S.*). A chart, print, cut, engraving, &c., is infringed by engraving, etching, working, copying, printing, publishing, importing, selling or exposing for sale a copy of the chart, cut, &c. (*sec.* 4965). It would not be infringement of a book within these sections to prepare and arrange the type in exact imitation of the original, so that a copy of the book might be produced by printing, nor would it be to sell the means of making such a copy to another. The printing and publishing of a cut is an infringement of copyright as well as the printing and publishing of a book, but the copying without printing or publishing is infringement only as to the cut, chart, print, engraving, &c.

The question here is not whether the defendant has infringed the plaintiffs' copyright in a cut, but whether he has infringed their copyright in their book by making a plate from which a copy of a portion of their book could be produced, and selling the plate to another.

The copyright of a book is not always invaded by reproducing a part of the work. Where portions are extracted and published in a book or newspaper by another, the question whether there has been a piracy depends upon the extent and character of his use of them. Thus it is not piracy for a reviewer or commentator to make use of the portions of a copyrighted work for the purposes of fair exposition or reasonable criticism. The question always is whether there is a substantial identity between the original book and the reproduction, or as it is sometimes expressed, whether there has been an appropriation, substantially, of the labors of the original author. The law does not tolerate an appropriation which tends to supersede the original. A test frequently applied is whether the extracts as used are likely to injure the sale of the original work (*see Black* agt. *Murray*, 9 *Scotch Sess. Cases* [3d *series*], 356). In

the language of the court in *Story's Ex'rs* agt. *Holcomb* (4 *McLean*, 308), the inquiry is what effect must the extracts have upon the original work. If they render it less valuable by superseding its use in any degree, the right of the author is infringed, and it can be of no importance to know with what intent this was done.

Applying the test here, it is not altogether clear that the proprietors of the *Illustrated Times* infringed the plaintiff's rights, although they published the cut in a competing newspaper.

In *Hutton* agt. *Arthur* (*Law Rep.* [8 *Exch.*, 1]), the piracy complained of was the publication of nine caricatures of Napoleon III., originally printed separately in numbers of *Punch*, issued within the period of 1849 to 1867.

The court found that the defendant had republished them " for the same purpose as they were originally published, namely, to excite the amusement of his readers," and, therefore, that piracy was made out. It was doubted, in that case, whether the publication of a single picture would have been piracy. KELLY, C. B., said : "It is said that the copying of a single picture, at all events, would not be an infringement of the plaintiff's copyright; but it is impossible to lay that down as a general rule." It is not necessary to determine the question here. Assuming that the publishing of a single poem or article or illustrations from the copyrighted newspaper may be piracy, the defendant has not done this. The reproduction of the cut and the sale of the stereotype plate without more, treating those acts as using an extract from the plaintiffs' newspaper, could not injure the plaintiffs or interfere, to any appreciable extent, with the profits they could derive from the sale of their copyrighted publication. The cut was capable of use innocently in various ways, having no relation to the publications and sale of a newspaper. If the defendant had sold the electrotype plate intending, or even expecting, the purchasers to use it in competition with the plaintiff, he might be regarded as having sanctioned that use in advance, and consequently as occupying the position of a party acting in concert with them, and responsible with

them as joint-tort feasors (*Wallace* agt. *Holmes,* 9 *Blatch.,* 65). Thus it was held in *Dekuyper* agt. *Widdeman* (23 *Fed. Rep.,* 871 that a defendant who had printed and sold labels in imitation of a trade-mark with the purpose of enabling the parties to whom he sold them to palm off their goods upon the public as those of the owner of the trade-mark, was an infringer.

There is no evidence, however, in this case that the defendant contemplated that the purchasers would make any illegitimate use of the plates. They could have used it as he could, to print a trade-mark or an advertising cut, or in other ways which could not interfere with the sale of the plaintiffs' newspaper. The law will not assume, without evidence, or simply upon proof that the defendant sold the plate to the proprietors of a newspaper, that he intended to authorize a violation of the plaintiffs' rights (*Averill* agt. *Williams,* 1 *Denio,* 501). The defendant has copied the cut, but he has not printed or published it, nor has he exposed for sale any printed or published copy of any part of the plaintiffs' newspaper.

Judgment is, therefore, ordered for the defendant.