## BAKER *v.* SELDEN.

1. A claim to the exclusive property in a peculiar system of book-keeping cannot, under the law of copyright, be maintained by the author of a treatise in which that system is exhibited and explained.
2. The difference between a copyright and letters-patent stated and illustrated.

APPEAL from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Alphonso Taft* and *Mr. H. P. Lloyd* for the appellant.
*Mr. C. W. Moulton* and *Mr. M. I. Southard* for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

Charles Selden, the testator of the complainant in this case, in the year 1859 took the requisite steps for obtaining the copy-

right of a book, entitled " Selden's Condensed Ledger, or Book-keeping Simplified," the object of which was to exhibit and explain a peculiar system of book-keeping. In 1860 and 1861, he took the copyright of several other books, containing additions to and improvements upon the said system. The bill of complaint was filed against the defendant, Baker, for an alleged infringement of these copyrights. The latter, in his answer, denied that Selden was the author or designer of the books, and denied the infringement charged, and contends on the argument that the matter alleged to be infringed is not a lawful subject of copyright.

The parties went into proofs, and the various books of the complainant, as well as those sold and used by the defendant, were exhibited before the examiner, and witnesses were examined on both sides. A decree was rendered for the complainant, and the defendant appealed.

The book or series of books of which the complainant claims the copyright consists of an introductory essay explaining the system of book-keeping referred to; to which are annexed certain forms or blanks, consisting of ruled lines, and headings, illustrating the system and showing how it is to be used and carried out in practice. This system effects the same results as book-keeping by double entry; but, by a peculiar arrangement of columns and headings, presents the entire operation, of a day, a week, or a month, on a single page, or on two pages facing each other, in an account-book. The defendant uses a similar plan so far as results are concerned; but makes a different arrangement of the columns, and uses different headings. If the complainant's testator had the exclusive right to the use of the system explained in his book, it would be difficult to contend that the defendant does not infringe it, notwithstanding the difference in his form of arrangement; but if it be assumed that the system is open to public use, it seems to be equally difficult to contend that the books made and sold by the defendant are a violation of the copyright of the complainant's book considered merely as a book explanatory of the system. Where the truths of a science or the methods of an art are the common property of the whole world, and author has the right to express the one, or explain and use the other, in

his own way.  As an author, Selden explained the system in a particular way.  It may be conceded that Baker makes and uses account-books arranged on substantially the same system; but the proof fails to show that he has violated the copyright of Selden's book, regarding the latter merely as an explanatory work; or that he has infringed Selden's right in any way, unless the latter became entitled to an exclusive right in the system.

The evidence of the complainant is principally directed to the object of showing that Baker uses the same system as that which is explained and illustrated in Selden's books.  It becomes important, therefore, to determine whether, in obtaining the copyright of his books, he secured the exclusive right to the use of the system or method of book-keeping which the said books are intended to illustrate and explain.  It is contended that he has secured such exclusive right, because no one can use the system without using substantially the same ruled lines and headings which he has appended to his books in illustration of it.  In other words, it is contended that the ruled lines and headings, given to illustrate the system, are a part of the book, and, as such, are secured by the copyright; and that no one can make or use similar ruled lines and headings, or ruled lines and headings made and arranged on substantially the same system, without violating the copyright.  And this is really the question to be decided in this case.  Stated in another form, the question is, whether the exclusive property in a system of book-keeping can be claimed, under the law of copyright, by means of a book in which that system is explained?  The complainant's bill, and the case made under it, are based on the hypothesis that it can be.

It cannot be pretended, and indeed it is not seriously urged, that the ruled lines of the complainant's account-book can be claimed under any special class of objects, other than books, named in the law of copyright existing in 1859.  The law then in force was that of 1831, and specified only books, maps, charts, musical compositions, prints, and engravings.  An account-book, consisting of ruled lines and blank columns, cannot be called by any of these names unless by that of a book.

There is no doubt that a work on the subject of book-keeping,

though only explanatory of well-known systems, may be the subject of a copyright; but, then, it is claimed only as a book. Such a book may be explanatory either of old systems, or of an entirely new system; and, considered as a book, as the work of an author, conveying information on the subject of book-keeping, and containing detailed explanations of the art, it may be a very valuable acquisition to the practical knowledge of the community. But there is a clear distinction between the book, as such, and the art which it is intended to illustrate. The mere statement of the proposition is so evident, that it requires hardly any argument to support it. The same distinction may be predicated of every other art as well as that of book-keeping. A treatise on the composition and use of medicines, be they old or new; on the construction and use of ploughs, or watches, or churns; or on the mixture and application of colors for painting or dyeing; or on the mode of drawing lines to produce the effect of perspective, — would be the subject of copyright; but no one would contend that the copyright of the treatise would give the exclusive right to the art or manufacture described therein. The copyright of the book, if not pirated from other works, would be valid without regard to the novelty, or want of novelty, of its subject-matter. The novelty of the art or thing described or explained has nothing to do with the validity of the copyright. To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright. The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government.

The difference between the two things, letters-patent and copyright, may be illustrated by reference to the subjects just enumerated. Take the case of medicines. Certain mixtures are found to be of great value in the healing art. If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the

public.   If he desires to acquire such exclusive right, he must obtain a patent for the mixture as a new art, manufacture, or composition of matter.   He may copyright his book, if he pleases ; but that only secures to him the exclusive right of printing and publishing his book.   So of all other inventions or discoveries.

The copyright of a book on perspective, no matter how many drawings and illustrations it may contain, gives no exclusive right to the modes of drawing described, though they may never have been known or used before.   By publishing the book, without getting a patent for the art, the latter is given to the public.   The fact that the art described in the book by illustrations of lines and figures which are reproduced in practice in the application of the art, makes no difference.   Those illustrations are the mere language employed by the author to convey his ideas more clearly.   Had he used words of description instead of diagrams (which merely stand in the place of words), there could not be the slightest doubt that others, applying the art to practical use, might lawfully draw the lines and diagrams which were in the author's mind, and which he thus described by words in his book.

The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires.   The very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains.   But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book.   And where the art it teaches cannot be used without employing the methods and diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public; not given for the purpose of publication in other works explanatory of the art, but for the purpose of practical application.

Of course, these observations are not intended to apply to ornamental designs, or pictorial illustrations addressed to the taste.   Of these it may be said, that their form is their essence,

and their object, the production of pleasure in their contemplation. This is their final end. They are as much the product of genius and the result of composition, as are the lines of the poet or the historian's periods. On the other hand, the teachings of science and the rules and methods of useful art have their final end in application and use; and this application and use are what the public derive from the publication of a book which teaches them. But as embodied and taught in a literary composition or book, their essence consists only in their statement. This alone is what is secured by the copyright. The use by another of the same methods of statement, whether in words or illustrations, in a book published for teaching the art, would undoubtedly be an infringement of the copyright.

Recurring to the case before us, we observe that Charles Selden, by his books, explained and described a peculiar system of book-keeping, and illustrated his method by means of ruled lines and blank columns, with proper headings on a page, or on successive pages. Now, whilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practise and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it. The copyright of a book on book-keeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plan set forth in such book. Whether the art might or might not have been patented, is a question which is not before us. It was not patented, and is open and free to the use of the public. And, of course, in using the art, the ruled lines and headings of accounts must necessarily be used as incident to it.

The plausibility of the claim put forward by the complainant in this case arises from a confusion of ideas produced by the peculiar nature of the art described in the books which have been made the subject of copyright. In describing the art, the illustrations and diagrams employed happen to correspond more closely than usual with the actual work performed by the operator who uses the art. Those illustrations and diagrams consist of ruled lines and headings of accounts; and

it is similar ruled lines and headings of accounts which, in the application of the art, the book-keeper makes with his pen, or the stationer with his press; whilst in most other cases the diagrams and illustrations can only be represented in concrete forms of wood, metal, stone, or some other physical embodiment. But the principle is the same in all. The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent.

The remarks of Mr. Justice Thompson in the Circuit Court in *Clayton* v. *Stone & Hall* (2 Paine, 392), in which copyright was claimed in a daily price-current, are apposite and instructive. He says: " In determining the true construction to be given to the act of Congress, it is proper to look at the Constitution of the United States, to aid us in ascertaining the nature of the property intended to be protected. ' Congress shall have power to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their writings and discoveries.' The act in question was passed in execution of the power here given, and the object, therefore, was the promotion of science; and it would certainly be a pretty extraordinary view of the sciences to consider a daily or weekly publication of the state of the market as falling within any class of them. They are of a more fixed, permanent, and durable character. The term ' science ' cannot, with any propriety, be applied to a work of so fluctuating and fugitive a form as that of a newspaper or price-current, the subject-matter of which is daily changing, and is of mere temporary use. Although great praise may be due to the plaintiffs for their industry and enterprise in publishing this paper, yet the law does not contemplate their being rewarded in this way : it must seek patronage and protection from its utility to the public, and not as a work of science. The title of the act of Congress is, ' for the encouragement of learning,' and was not intended for the encouragement of mere industry, unconnected with learning and the sciences. . . . We are, accordingly, of opinion that the paper in question is not

a book the copyright to which can be secured under the act of Congress."

The case of *Cobbett* v. *Woodward* (Law Rep. 14 Eq. 407) was a claim to copyright in a catalogue of furniture which the publisher had on sale in his establishment, illustrated with many drawings of furniture and decorations.   The defendants, being dealers in the same business, published a similar book, and copied many of the plaintiff's drawings, though it was shown that they had for sale the articles represented thereby. The court held that these drawings were not subjects of copyright.   Lord Romilly, M. R., said: "This is a mere advertisement for the sale of particular articles which any one might imitate, and any one might advertise for sale.   If a man not being a vendor of any of the articles in question were to publish a work for the purpose of informing the public of what was the most convenient species of articles for household furniture, or the most graceful species of decorations for articles of home furniture, what they ought to cost, and where they might be bought, and were to illustrate his work with designs of each article he described, — such a work as this could not be pirated with impunity, and the attempt to do so would be stopped by the injunction of the Court of Chancery; yet if it were done with no such object, but solely for the purpose of advertising particular articles for sale, and promoting the private trade of the publisher by the sale of articles which any other person might sell as well as the first advertiser, and if in fact it contained little more than an illustrated inventory of the contents of a warehouse, I know of no law which, while it would not prevent the second advertiser from selling the same articles, would prevent him from using the same advertisement; provided he did not in such advertisement by any device suggest that he was selling the works and designs of the first advertiser."

Another case, that of *Page* v. *Wisden* (20 L. T. N. S. 435), which came before Vice-Chancellor Malins in 1869, has some resemblance to the present.   There a copyright was claimed in a cricket scoring-sheet, and the Vice-Chancellor held that it was not a fit subject for copyright, partly because it was not new, but also because "to say that a particular

mode of ruling a book constituted an object for a copyright is absurd."

These cases, if not precisely in point, come near to the matter in hand, and, in our view, corroborate the general proposition which we have laid down.

In *Drury* v. *Ewing* (1 Bond, 540), which is much relied on by the.complainant, a copyright was claimed in a chart of patterns for cutting dresses and basques for ladies, and coats, jackets, &c., for boys.   It is obvious that such designs could only be printed and published for information, and not for use in themselves.   Their practical use could only be exemplified in cloth on the tailor's board and under his shears ; in other words, by the application of a mechanical operation to the cutting of cloth in certain patterns and forms.   Surely the exclusive right to this practical use was not reserved to the publisher by his copyright of the chart.   Without undertaking to say whether we should or should not concur in the decision in that case, we think it cannot control the present.

The conclusion to which we have come is, that blank account-books are. not the subject of copyright; and that the mere copyright of Selden's book did not confer upon him the exclusive right to make and use account-books, ruled and arranged as designated by him and described and illustrated in said book.

The decree of the Circuit Court must be reversed, and.the cause remanded with instructions to dismiss the complainant's bill; and it is

*So ordered.*