BAMFORTH et al. v. DOUGLASS POST CARD & MACHINE CO. et al.

(Circuit Court, E. D. Pennsylvania.   January 13, 1908.)

No. 2.

1. TRADE-MARKS—IDENTIFICATION OF PRODUCT—POST CARDS.
   Uncopyrighted post cards are not entitled to protection as trade-marks either singly or collectively, as they do not identify and distinguish the product of the manufacturer, but constitute the product itself.

2. SAME—UNLAWFUL COMPETITION.
   The manufacturer of uncopyrighted post cards having no legal right to the exclusive production and sale thereof, the manufacture and sale of like cards by a rival manufacturer may not be restrained as unlawful competition.

3. LITERARY PROPERTY—UNCOPYRIGHTED PUBLICATION—EXCLUSIVE PROPERTY.
   Neither a book nor a photograph can continue to be the author's exclusive property after it has been printed and offered to the public for sale without being copyrighted.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Literary Property, § 4.]

Motion for Preliminary Injunction.

E. A. Waters and A. H. Rosenfeld, for complainants.
Frank S. Busser and George J. Harding, for respondents.

J. B. McPHERSON, District Judge.   The right declared by the complainants' bill to have been invaded is thus described in the first and second paragraphs:

"(1) Your orators are engaged in the publication of illustrated post cards in England, and their sale in England and in the United States.   The said business was established in 1900 by your orators, and consists in illustrating post cards by pictures taken from life models and selling such illustrated cards, and was the first business of its kind to be established in either England or in the United States and the Eastern district of Pennsylvania.   Said business has been carried on under the name of Bamforth & Co. continuously since then to the present time.   Owing to the fact that your orators were pioneers in this business and to the wide advertisement and high quality of their goods, the name 'Bamforth & Co.' has become associated in the public mind with your orators' products, and they are commonly spoken of, bought, and sold by the trade as 'The Bamforth Card' throughout the United States and in the said Eastern district of Pennsylvania.

"(2) And your orators further show unto your honors that they have manufactured and sold throughout the United States and the said Eastern district of Pennsylvania certain post cards which, by reason of the pictures thereon placed and the titles thereto attached and the wide advertisement given them, have attained to great popularity, have been much sought after, and have been sold in great numbers.   These post cards so decorated and labeled are entitled:   'A quiet time at last'; 'Everybody works but father,'" etc.

It is this right which the defendants are charged with violating; the acts complained of being thus set forth in paragraphs 3 and 4:

"(3) Your orators further show unto your honors that the defendant Douglass is president of the Douglass Post Card & Machine Company, and the defendant Burge is secretary and treasurer of the Douglass Post Card & Machine Company, and that they are familiar with the reputation and value of the name 'Bamforth,' and with the above-mentioned illustrated post cards published by your orators, and the fact that they have a high reputation, also that they are generally known under the name of 'Bamforth'; that they, knowing

these facts and designing to obtain the benefit of your orators' reputation, combined with each other and with divers other persons at present unknown to your orators—whose names when discovered your orators pray that they may have leave to insert herein with apt words to charge them as parties defendant hereto—under the name of the 'Douglass Post Card & Machine Company, Inc.,' have published and are publishing, and have sold and are selling, in the United States and the said Eastern district of Pennsylvania, postal cards on which was and is stamped either your orators' name, 'Bamforth & Co.' or the aforementioned pictures and titles of your orators, which have become known to the trade as published by your orators, or both, copies of which are hereto attached.

"(4) And your orators further show unto your honors that the defendants have made and are making a fraudulent attempt to obtain the benefit of your orators'· reputation made by reason of their herein before mentioned and other illustrated post cards, and of your orators' name 'Bamforth,' and to pass off or cause to be passed off on the public goods not of your orators' publication as and for the goods of your orators. And your orators further say that the amount involved and the damages threatened, and which will be incurred by your orators, if the relief herein prayed for be not granted, greatly exceeds the sum of $10,000."

As thus appears, the bill is directed against unfair competition; its object being further shown by the principal prayer, which asks for an injunction restraining the defendants—

"from buying, selling, or dealing in post cards not published by Bamforth & Co., but bearing the name 'Bamforth,' or bearing any of the pictures or titles or both herein above mentioned and attached hereto, and from obtaining or endeavoring to obtain the benefit of your orators' reputation by any fraudulent use of the name 'Bamforth,' or of the herein above mentioned illustrated cards in the business of selling or manufacturing or publishing post cards illustrated from life models; and from using or selling or in any manner parting with machinery, blocks, and plates employed in producing illustrated post cards wherein the name of 'Bamforth,' or wherein the above named pictures and titles or both appear, and from shipping or parting with any such cards, advertisements, or circulars which they may have in their possession, but that such cards and circulars be delivered up to be destroyed; and that the defendants be compelled to render a full, true, and perfect account of all profits which they have made by the use of the said name 'Bamforth,' or by the use of the above mentioned titles and illustrations, or both; and that the defendants be decreed to pay over to your orators all such profits, together with the costs of this suit."

A further prayer asks:

"That the defendants be compelled to pay your orators compensation for all damages and injury they have by their fraud occasioned, together with such other equitable relief as to your honors shall seem meet."

Upon the hearing of the pending motion, the following facts appeared: The complainants may, or may not, have been the originators of the business described in paragraph 1, but it is undoubtedly true that for several years before the filing of the bill they have been making pictures from life models by a photographic process, and have been extensively engaged, in this district and elsewhere, in selling post cards illustrated by these pictures. The photographs were made by the well-known process. Living persons posed for the picture, a negative was obtained in the ordinary way, and duplicates were printed therefrom upon post cards, which were afterwards offered for sale to the public, and were sold in large numbers. So far as appears from the evidence, none of these photographs has ever

been copyrighted, either in this country or in Great Britain. It is true that some of them bear upon their face the statement that they have been copyrighted; but, if such statement has any value as evidence, it has been satisfactorily disproved, and the fact has been shown to be that, so far as several of the photographs are concerned, the statement is altogether untrue, no effort to obtain a copyright having ever been made; and, so far as others are concerned, if a formal copyright was ever obtained, it was invalid, because of previous publication and sale.

The defendants have made exact copies of the complainants' photographs by the half-tone process, and are selling the copies upon post cards at a much lower price than the originals can be sold. They have been engaged in this business for more than a year. At first they printed and sold their half-tone cards with the name "Bamforth & Co." thereon, as well as the titles of the pictures; but, upon the advice of counsel, the use of the complainants' name was soon discontinued. No cards bearing their name had been printed for several months before the bill was filed, and the defendants disclaim any intention to resume its use, conceding that such action on their part was improper, and that a threatened continuance thereof should be enjoined. But they claim the right to go on with the reproduction of the subjects and the titles of complainants' cards, taking the position that these cards are uncopyrighted photographs which have been dedicated to the public by repeated sales, and may therefore be copied freely by any person and by any process.

In my opinion this position cannot be successfully assailed. No question under the law of trade-marks or the law of unfair competition is now involved. These cards are not trade-marks, either singly or collectively, in any sense of the word. They do not identify and distinguish the complainants' product, but are the product itself; and there can be no question of unfair competition, because the complainants have no legal right to the exclusive production and sale. It would be useless to elaborate a subject so well understood. A photograph, if it be also an artistic production, the result of original intellectual conception on the part of the author, may be copyrighted with the same effect as if it were a book; but, without this protection of the federal statutes, neither the book nor the photograph can continue to be the author's exclusive property, after it has been printed and offered to the public for sale. No authorities need be cited for so plain a proposition. The copyright statutes would have been unnecessary if the author had been able to protect the fruit of his mental efforts in any other way; and, if he declines or omits to avail himself of the protection thus provided, he is conclusively presumed to have presented to the public the product of his creative powers, although he may have had no intention of making such a gift. No doubt a photograph might be adopted as a trade-mark to distinguish a manufactured article; but, how a photograph, if it be also a work of art and therefore capable of copyright, can be the subject of unfair competition, I am unable to understand. The only possible way to compete with such a photograph is to reproduce it, and any one may do this lawfully after it has been

published, unless the protection of the federal statutes concerning copyright has previously been obtained. The question, therefore, does not belong to the region of unfair competition, but concerns the subject of copyright alone. If the photograph is artistic and has been copyrighted, its reproduction is forbidden. If no copyright at all, or—what comes to the same thing—no valid copyright, has been obtained, the author has no exclusive right in the product of his artistic skill, and to copy is therefore not to compete unfairly in a legal sense, but to compete with the full sanction of the law.

A preliminary injunction must be refused. Disposition of the costs accrued upon this motion will be made upon final hearing. I need scarcely add that this decision rests solely on what I believe to be the defendants' legal right, and does not imply an approval of their deliberate appropriation of what is morally the complainants' property, although it has negligently or ignorantly been left without adequate protection.