**ALDRICH v. REMINGTON RAND, Inc., et al.**

Civil Action No. 263.

District Court, N. D. Texas, Fort Worth Division.

July 17, 1942.

R. V. Nichols and Martin, Moore & Brewster, all of Fort Worth, Tex., for plaintiff.

Cantey, Hanger, McMahon, McKnight & Johnson, of Fort Worth, Tex., for defendant Remington Rand, Inc.

Rhinehart Rouer, of Fort Worth, Tex., for defendant City of Fort Worth.

WILSON, District Judge.

This is a suit for infringement of a copyright, praying damages, injunction, etc.

Plaintiff wrote a manual, or so called book, intended to facilitate the collection, assessment and equalization of taxes by cities, counties and school districts. In his book he said this of his system:

"The 'Tax Record System'

"This system and service is for counties, cities and other taxing districts, of Texas, and is the most modern and efficient system of property revaluation for tax purposes— Leaves a complete workable set of tax records in the district, and equips the assessor-collector with the proper methods for equalizing, assessing and collection of taxes."

In addition to a tax system, for the purposes indicated, plaintiff devised a bookkeeping system to make it efficient, all of which was more or less covered in his book. Attached to it, in the back of same, he had many forms, illustrative of his system. In paragraph 8 of Chapter V he referred to those forms and specially constructed automatic locking steel cabinets for housing his tax system, as follows: "In the back of this manual are shown samples of all forms, exactly as used in the system. Photographs of the steel filing cabinets with automatic locks specially constructed to house the complete system."

The defendants infringed, if at all, in using some of those forms in installing the system for the City of Fort Worth. The defendants denied they copied or were using plaintiff's forms. I held, in an oral opinion at the conclusion of the trial, that they were. Also, that they were infringing plaintiff's copyright, if those forms were included and were copyrightable. As to the latter question briefs were to be submitted. That is the principal question to be decided. My conclusion is they are not copyrightable. Plaintiff's quarrel appears to me to be one more with the inadequacy of protection afforded such an author by our system of copyright laws, than with these defendants. Plaintiff is asserting rights here he could only assert successfully if he had a patent on his tax bookkeeping system. But he has no patent. That and that only could protect him as against a use by the public of the system he describes in his book and illustrates by his forms. That seems to be well settled by the Supreme Court, as well by regulations duly promulgated by the Librarian of Congress.

In Baker v. Selden, 101 U.S. 99, 101, 25 L.Ed. 841, on this identical subject the Supreme Court held:

"There is no doubt that a work on the subject of book-keeping, though only explanatory of well-known systems, may be the subject of a copyright; but, then, it is claimed only as a book. Such a book may be explanatory either of old systems, or of an entirely new system; and, considered as a book, as the work of an author, conveying information on the subject of book-keeping, and containing detailed explanations of the art, it may be a very valuable acquisition to the practical knowledge of the community. But there is a clear distinction between the book, as such, and the art which it is intended to illustrate. The mere statement of the proposition is so evident, that it requires hardly any argument to support it. The same distinction may be predicated of every other art as well as that of book-keeping. * * *

"The copyright of a work on mathematical science cannot give to the author an exclusive right to the methods of operation which he propounds, or to the diagrams which he employs to explain them, so as to prevent an engineer from using them whenever occasion requires. The very object of publishing a book on science or the useful arts is to communicate to the world the useful knowledge which it contains. But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book. And where the art it teaches cannot be used without employing the methods and

diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public; not given for the purpose of publication in other works explanatory of the art, but for the purpose of practical application. * * *

"On the other hand, the teachings of science and the rules and methods of useful art have their final end in application and use; and this application and use are what the public derive from the publication of a book which teaches them. * * *

"Recurring to the case before us, we observe that Charles Selden, by his books, explained and described a peculiar system of book-keeping, and illustrated his method by means of ruled lines and blank columns, with proper headings on a page, or on successive pages. Now, whilst no one has a right to print or publish his book, or any material part thereof, as a book intended to convey instruction in the art, any person may practice and use the art itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it. The copyright of a book on book-keeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plan set forth in such book. * * *

"The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent."

The description in that opinion of Selden's forms is a better description of plaintiff's forms than I can write. The basic distinction between rights under patents and rights under copyrights must be constantly kept in mind, one being that the public is not free to use the invention described in a patent, but it is privileged to use whatever information is imparted in a copyrighted book about any system, art or manufacture described in it; furthermore, that such a use is the consideration the public receives for the grant of the copyright. As the Court made clear, an article written by one author describing a bookkeeping system, an art, or a manufacture, wholly the creation of another, is nevertheless subject to copyright. I think what that opinion holds, pertaining to the questions we have here, is still the law today. It is claimed Congress changed it, but I do not think so.

Plaintiff takes the apparently ingenuous position that his forms which illustrated, pictured, his tax bookkeeping system, as such became an ingredient, a component part, of his book, and were covered by his copyright, entitled alike to protection against use by the public. Plaintiff's forms of themselves imparted no more information than the words "credit" or "debit" at the head of such columns as we ordinarily see in any system of simple bookkeeping. With the book, plaintiff's forms attached thereto do complete the description of his system. This position was substantially the one taken in the Baker v. Selden case, and answered by the Court. The philosophy breaks down because: It is equivalent to taking the position that the author may so perfectly and completely describe what he teaches that the public may not be permitted to use same. The forms in question embody the mechanics of the tax bookkeeping system taught by plaintiff. It is a loose-leaf system. Those forms attached to plaintiff's copyrighted book are merely a page out of his loose-leaf system, even identical in dimensions. They embody in practice what plaintiff taught, all the public can use, after their use is explained or understood. The public can use the forms as plaintiff makes them, or modify them, change, improve them, or make them worse, without committing any piracy. Those forms belong to the public, plaintiff himself merely being a constituent part of it. How could the public appropriate the system identically, if it could not use the forms? That is all the defendants did, for which they are sued. The complete answer is given by the Supreme Court in Baker v. Selden: "The copyright of a book on book-keeping cannot secure the exclusive right to make, sell, and use account-books prepared upon the plan set forth in such book."

But plaintiff says Baker v. Selden has been overruled; that the scope of the copyright laws have been so changed and extended by Acts of Congress since that decision, it is no longer controlling. Davis v. Vories, 141 Mo. 234, 42 S.W. 707, 708; Perris v. Hexamer, 99 U.S. 674, 25 L.Ed. 308; Kennedy v. McTammany, C.C., 33 F. 584; Stowe v. Thomas, 23 Fed.Cas. pages 201, 207, No. 13,514; National Tel. News

Co. v. Western Union Tel. Co., 7 Cir., 109 F. 294, 297, 60 L.R.A. 805; International News Service v. Associated Press, 248 U. S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; Advertisers Exch. v. Laufe, D.C., 29 F.Supp. 1; Lindsay & Brewster, Inc., v. Verstein, D.C., 21 F.Supp. 264; Kraft v. Cohen, D.C., 32 F.Supp. 821; Deutsch v. Arnold, 2 Cir., 98 F.2d 686. As to the question here to decide, I do not agree with that view. I think it is controlling. This significant admission is made in plaintiff's brief: "The attention of the Court is further called to the fact that the Copyright Act, Title 17, Sec. 5, U.S.C.A., neither expressly includes, nor does it expressly or by implication exclude the matters herein involved (forms) as copyrightable matter. The only method of determination is the judicial constructions of the act, together with the administrative interpretations of the Copyright Office. * * * Hence, there is no definite case controlling the issues involved herein, and we must rely on inference, innuendo, and the construction of the Copyright in view of its liberalized provisions, and the present trend in judicial interpretations in like matters." (Parenthesis mine)

Say that is true, the difficulty of plaintiff is that the laboring oar is on him to show that what defendants did is included and forbidden. Accepting that as the basis of decision, let us look at the statutes and the regulations that govern here.

Section 5, Title 17 U.S.C.A.:

"Classification of works for registration. The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books, including composite and cyclopedic works, directories, gazetteers, and other compilations;

"(b) Periodicals, including newspapers;

"(c) Lectures, sermons, addresses (prepared for oral delivery);

"(d) Dramatic or dramatico-musical compositions;

"(e) Musical compositions;

"(f) Maps;

"(g) Works of art; models or designs for works of art;

"(h) Reproductions of a work of art;

"(i) Drawings or plastic works of a scientific or technical character;

"(j) Photographs;

"(k) Prints and pictorial illustrations;

"(l) Motion-picture photoplays;

"(m) Motion pictures other than photoplays.

"The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title."

Sec. 53, Title 17: "Rules for registration of claims. Subject to the approval of the Librarian of Congress, the register of copyrights shall be authorized to make rules and regulations for the registration of claims to copyright as provided by this title."

The regulations of the Librarian of Congress under the last Section in effect at the time in question, and now, are:

"Section 5 of the act names the thirteen classes of works for which copyright may be secured, as follows:

"(a) Books.—This term includes 'composite and cyclopaedic works, directories, gazeteers, and other compilations,' and, generally all printed literary works (except dramatic compositions) whether published in the ordinary shape of a book or pamphlet, or printed as a leaflet, card, or single page. The term 'book' as used in the law includes tabulated forms of information, frequently called charts; tables of figures showing the results of mathematical computations, such as logarithmic tables; interest, cost, and wage tables, etc., single poems, and the words of a song when printed and published without music; descriptions of motion pictures or spectacles; catalogues; circulars or folders containing information in the form of reading matter and literary contributions to periodicals or newspapers.

"5. The term 'book' cannot be applied to—

"Blank books for use in business or in carrying out any system of transacting affairs, such as record books, account books, memorandum books, blank diaries or journals, bank deposit and check books; forms of contracts or leases which do not contain original copyrightable matter; coupons; forms for use in commercial, legal, or financial transactions, which are wholly or partly blank and whose value lies in their usefulness."

As to the point we are considering, the quoted statutes and regulations appear to be so plain as not to be subject to construction. The latter paragraph of the regulations plainly says: "The term 'book' cannot be applied to * * * forms for use in commercial, legal or financial transactions, which are wholly or partly blank and whose value lies in their usefulness." The quotation fits the forms here in every detail, and the use made of them by the defendant City of Fort Worth in maintaining an efficient tax assessment, valuation and collection system. What it has done in this regard is a legal and financial transaction between it and its tax payers.

Lastly, plaintiff takes the position that if his forms were not copyrightable, the defendant Remington Rand is nevertheless liable since it was guilty of unfair competition. The weakness of this position is that plaintiff relies to sustain this charge upon the identical facts he relied upon to show an infringement of his copyright. Yet this claim is independent of the copyright laws. The case mainly relied upon is International News Service v. Associated Press, supra. I think the fact situation in that case was quite different to this one. Also, there is no pretense here that there was anything unfair in what defendants did other than the fact the City worked out some forms substantially the same as plaintiff's, had Remington Rand make them and then used them for its own private purposes. There is no contention that defendants practiced any fraud in procuring plaintiff's forms. In fact, plaintiff in the foreword of his book said this: "It is hoped that this manual will be a guide which will assist counties, cities and taxing districts of Texas in securing projects of this kind." The defendant City took plaintiff at his word. It put on such a project with the W.P.A. and had a Government man all the time as supervisor of the project. This supervisor, together with his employees and the City's employees, completed the project and as I hold, as to forms, substantially adopted those of plaintiff. There was no concealment whatsover from plaintiff. My recollection is that he aided the defendant City in every way he reasonably could. On the other hand, it is not contended that there was any fraudulent or unfair practices on the part of defendants in the manner of their use of these forms. They did not advertise to the world or claim that the forms they were

adopting belonged to plaintiff. In other words, they in no manner undertook to realize on his reputation in such matters. They represented the forms they finally adopted to be their own; they denied they were plaintiff's and are still denying it.

■ In the law of unfair competition, an underlying principle is, if the form is to answer functional requirements, and, as in this instance, was adopted for that purpose, such an act constitutes no evidence of unfair competition. Nims on Unfair Competition, pages 376, 383; Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N.E. 667; Cheney Bros. v. Doris Silk Corp., 2 Cir., 35 F.2d 279, writ of certiorari denied 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145; Nieman v. Plough Chemical Co., 6 Cir., 22 F.2d 73; Millinery Creator's Guild v. Federal Trade Commission, 2 Cir., 109 F.2d 175, affirmed 312 U.S. 469, 61 S.Ct. 708, 85 L.Ed. 955; Associated Press v. K.V.O. S., Inc., D.C., 9 F.Supp. 279; Lewis v. Vendome Bags, Inc., 2 Cir., 108 F.2d 16, writ of certiorari denied 309 U.S. 600, 60 S.Ct. 514, 84 L.Ed. 1008; Jackson v. Quickslip Co., 2 Cir., 110 F.2d 731; R.C.A. Mfg. Co. v. Whiteman, 2 Cir., 114 F.2d 86, writ of certiorari denied 311 U.S. 712, 61 S.Ct. 394, 85 L.Ed. 463, 465; Bamforth v. Douglass Post Card & Machine Co., C.C., 158 F. 355; Viavi Co. v. Vimedia Co., 8 Cir., 245 F. 289; Hamilton Mfg. Co. v. Tubbs Mfg. Co., D.C., 216 F. 401; J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949.

■ I haven't a transcript of the evidence before me, but if I remember the testimony correctly, I am not able to see any competition, in the transactions here complained of, fair or unfair. Competition is a contest between rivals. Here it means a contest between business rivals. As I recall when the City of Fort Worth had completed its project, for what it thought was an efficient system for the assessment, valuation and collection of its taxes, and had adopted forms for bookkeeping purposes, it called for bids, addressed to any and everybody, including plaintiff as well as Remington Rand, on the printing of about 200,000 of these forms; that Remington Rand underbid plaintiff and all others, and got the contract. It would be difficult to make that act on the part of Fort Worth a contest between business rivals; in other words, competition of any kind. The power of cities like Fort Worth

is very limited with respect to the kind of businesses they can legally go into. Certainly it was not engaged in the printing business, or stationery business. It was merely calling for bids on a job of work, which it had planned. This is referred to in the briefs as a sale by Remington Rand of the forms. I think, though, that I state the facts. The most Remington Rand sold was the paper and ink. As to the labor and skill applied, it was merely hired as a contractor to do that. In any event, that was the essence of its transaction with the City. Whatever it may properly be styled, since this charge must be limited to use of the forms, it is straining the law and the facts to class it unfair competition, or competition at all, as between Remington Rand and plaintiff. The bidding was, competition, as between plaintiff and Remington Rand, but the fairness or unfairness of that is not raised or involved. Plaintiff charges Remington Rand with unfair competition, but to show it, cannot solely rely upon what Remington Rand did. I can see no difference, if the City had gone to a printing establishment in Fort Worth and told them to print these forms and send them a bill for it. If the City, for any reason, had decided not to use them, there could hardly be any competition. Plaintiff is not in the printing business. It is the City only that uses the forms. Under such circumstances I am not able to see how Remington Rand could be guilty of unfair competition unless the City of Fort Worth was. Obviously, whatever unfairness or injustice the City dealt out to plaintiff in this deal, it would be a misnomer to call it unfair competition. Plaintiff is undertaking to cover too much territory with his theory of unfair competition. If successful, it would be better for him than a patent or copyright, since it would give him a monopoly in his forms without limit, as to time. The fact that Remington Rand guaranteed to protect Fort Worth as against infringement does not affect the question.

 Defendants plead for an allowance of attorneys' fees, as they have a right to do. Section 40, Title 17 U.S.C.A., provides the court must allow full cost and may allow attorneys' fees to the prevailing party in copyright suits. So, it is a matter within the court's discretion. Plaintiff's tax system and his forms for using it were so good that defendants appropriated them. They were very valuable, but cost the defendants nothing. On the broad principle

of what is right dealing between man and man, the one that has the law on his side is not always right. The course pursued was calculated to bring on this very sincere suit. I think it would be no hardship for the defendants to pay their own attorneys.

For the reasons stated, the motion to dismiss will be sustained.