**CONTINENTAL CASUALTY COMPANY,**
Plaintiff-Appellee-Appellant,

v.

**Hulbert T. E. BEARDSLEY and H. T. E. Beardsley, Inc., Defendants-Appellants-Appellees.**

**No. 174, Docket 24752.**

United States Court of Appeals
Second Circuit.

Argued Feb. 13, 1958.

Decided March 24, 1958.

Leslie D. Taggart, of Watson, Leavenworth, Kelton & Taggart, New York City (Watson, Leavenworth, Kelton & Taggart, New York City, John Rex Allen, Chicago, Ill., Paul L. Latham, Chicago, Ill., and Robert C. Nicander, New York City, on the brief), for plaintiff-appellee-appellant.

Benjamin Busch, New York City (Sprague & Peck, Otto C. Sommerich, and Stuart Sprague, New York City, on the brief), for defendants-appellants-appellees.

Before HINCKS and LUMBARD, Circuit Judges, and DIMOCK, District Judge.

HINCKS, Circuit Judge.

These are cross-appeals arising out of a suit brought by Continental Casualty Company (Continental) which sought a declaratory judgment that defendants' copyrights were invalid together with an injunction, an accounting, and counsel fees. Continental also demanded damages for unfair competition and violation of the antitrust laws. The defendant, Beardsley,[1] counterclaimed alleging infringement by Continental of his valid copyrights and that Continental was liable for unfair competition. The District Court held that the material in question was not properly copyrightable; that, even if it were, the copyright had been lost; and, further, that there was no infringement. The District Court granted the declaratory relief sought by Continental and an injunction. It rejected the unfair competition claims of both parties and Continental's antitrust claim and its request for an accounting and counsel fees. Each party has appealed from every adverse ruling below. In addition, Beardsley contends that in any event the injunction is too broad.

### Copyrightability

This controversy had its inception in the late 1930's. Defendant Beardsley was an insurance broker (also a member of the bar) who allegedly developed a blanket bond to cover replacement of lost securities which would operate *in futuro*. In September 1939, he published his "plan" in a six-page pamphlet. The entire pamphlet carried a copyright notice and Continental admits that the introductory three pages of narrative

---

1. H. T. E. Beardsley, Inc., was named as a co-defendant. Its legal position does not differ from that of Hulbert T. E. Beardsley. The use of "defendant" or "Beardsley" is intended to refer to both.

are validly copyrighted. As to these three pages, however, there is no claim of infringement. Continental contended below, and the court agreed, that the remaining three pages of forms to carry out the "plan" were not copyrightable. The forms included a proposed bond, an affidavit of loss and indemnity agreement, and drafts of an instruction letter and board resolutions. Beardsley had also devised various insurance instruments, some but not all of which he had copyrighted.

■ We find nothing which, as a matter of law, prevents the copyrighting of forms and insurance instruments such as those now before us. Article I, Section 8, Cl. 8 of the United States Constitution grants Congress power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Congress in 17 U.S.C.A. § 4 has provided that "The works for which copyright may be secured under this title shall include all the works of an author."[2] See also Brightley v. Littleton, C.C.E.D.Pa., 37 F. 103.

Notwithstanding this general authority in support of the copyrightability of forms, Continental relies upon Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841. In that case Selden had written a book explaining a simplified system of bookkeeping. This system used the so-called "T accounts," familiar to any student of accounting or bookkeeping, which had the usual headings. The court held that though the explanation of the system was copyrightable, the system itself—as evidenced by the account forms—was not copyrightable. A distinction was drawn between "explanation" and "use," the court stating that material relating to "use" could be protected, if at all, only by patent. Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630, does not weaken Selden in any way.

Mazer was concerned with electric lamp bases which had been copyrighted as works of art. The court held that the fact that these bases were also put to practical use did not destroy their copyrightability.

In Baker v. Selden, supra, the subject-matter was such that the explanation of the system could be treated as separable from account books prepared and arranged for the practice of the system. But not so here. For inseparably included in Beardsley's bonds and affidavits, which constitute the means for the practice of his Plan, is language explanatory of the Plan. Consequently, the holding of Baker v. Selden is not applicable here. See also Taylor Instrument Companies v. Fawley-Brost Co., 7 Cir., 139 F.2d 98, certiorari denied 321 U.S. 785, 64 S.Ct. 782, 88 L.Ed. 1076, chart for recording temperatures; Aldrich v. Remington-Rand, D.C.N.D. Texas, 52 F.Supp. 732, sheets for keeping tax records; Page v. Wisden, 20 L.T.R. (n. s.) 435, cricket scoring sheet. And since the Constitution and Copyright Act read directly upon all the forms here involved, we hold them to be copyrightable.

This resolution of the question of copyrightability raises several very serious questions as to the scope of the protection granted which we now come to consider.

### Infringement

■ We agree completely with the conclusion of the trial court that Beardsley did not succeed in proving infringement. This he attempted by an indirect method. He offered forms which had been used by the Pullman Company contending that these Pullman forms infringed his forms. He then asserted that Continental had infringed Pullman and, indirectly therefore, Beardsley.

After proving some similarity between the Continental and Pullman

---

**2.** Continental argued below that Beardsley's "authorship" of the Beardsley Plan pamphlet was not sufficient to entitle him to a copyright. Judge Palmieri found it unnecessary to resolve this conflict. We reach the same conclusion for reasons which will appear shortly.

forms, Beardsley went no further. He asserted that the burden then shifted to Continental to show that Pullman did *not* infringe Beardsley. For this proposition Amdur, Copyright Law & Practice, 688–692 and cases there cited are relied upon. Whether this be sound law it is not necessary for us now to decide. For irrespective of the burden of proof or of going forward, the proofs here showed that as to the affidavit of loss, although the Continental and Pullman forms are very similar, the Beardsley form is sufficiently different from both to negate infringement. And as to the other documents none are close enough to the Beardsley forms to require the reversal of the trial court's holding of non-infringement.

There have been several cases dealing with the copyrighting of insurance and similar forms. Significantly, they uniformly are decided by holdings of non-infringement and leave undecided the copyrightability point.[3] These cases have set a stiff standard for proof of infringement.

In Dorsey v. Old Surety Life Ins. Co., 10 Cir., 98 F.2d 872, 874, 119 A.L.R. 1250 the court found non-infringement declaring, "To constitute infringement in such cases a showing of appropriation in the exact form or substantially so of the copyrighted material should be required."

In Crume v. Pacific Mut. Life Ins. Co., 7 Cir., 140 F.2d 182, certiorari denied 322 U.S. 755, 64 S.Ct. 1265, 88 L.Ed. 1584, the court found non-infringement of plaintiff's pamphlet describing a method for reorganizing insurance companies. As in all of these cases, the court was keenly aware that to prohibit similarity of language would have the effect of giving the copyright owner a monopoly on his idea—which the cases uniformly deny to copyright owners. Thus, the court stated, 140 F.2d at pages 184–185:

"* * * In the instant situation there is no room for the skill of the mechanic or artisan in utilizing the plan or the method disclosed. Its use, to which the public is entitled, can be effected solely by the employment of words descriptive thereof. In our view, where the use can be effected only in such manner, there can be no infringement even though the plan or method be copied. We realize that such a view leaves little, if any, protection to the copyright owners; in fact, it comes near to invalidating the copyright. This situation, however, results from the fact that the practical use of the art explained by the copyright and lodged in the public domain can be attained solely by the employment of language which gives expression to that which is disclosed."

Further,

"We also observe that such comparison [of the documents] adds strength to the view heretofore expressed that defendant's rightful use of the art disclosed could only be accomplished by the employment of words which describe plaintiff's method. To hold that an idea, plan, method or art described in a copyright is open to the public but that it can be used only by the employment of different words and phrases which mean the same thing, borders on the preposterous. It is to exalt the accomplishment of a result by indirect means which could not be done directly. It places a premium upon evasion and makes this the test of infringement. Notwithstanding some authorities which support a theory permitting such a result, we think it is wrong and disapprove it."

Most recently, in Miner v. Employers Mutual Liability Co. of Wisconsin, 97

---

3. We have had to decide the copyright question here because one portion of the judgment appealed from enjoined Beardsley from claiming a copyright on any of his forms.

U.S.App.D.C. 152, 229 F.2d 35, the court approved the District Court holding that "[t]here is no similarity in the arrangement of words of plaintiff's policies and the arrangement of words in defendant's policy and that defendant has not appropriated in the exact form or substantially so plaintiff's copyright material."

These cases indicate that in the fields of insurance and commerce the use of specific language in forms and documents may be so essential to accomplish a desired result and so integrated with the use of a legal or commercial conception that the proper standard of infringement is one which will protect as far as possible the copyrighted language and yet allow free use of the thought beneath the language. The evidence here shows that Continental in so far as it has used the language of Beardsley's forms has done so only as incidental to its use of the underlying idea. Chautauqua School of Nursing v. National School of Nursing, 2 Cir., 238 F. 151. In so doing it has not infringed.

## Publication

Judge Palmieri held, alternatively, that Beardsley had forfeited his copyright to the forms in his pamphlet by a publication in January, 1939, without any copyright notice. As Judge L. Hand stated in National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594,[4] opinion clarified 198 F. 2d 927, it "has been unquestioned law since 1774" (Donaldson v. Becket, 4 Burrows 2408) "that the publication of a copyrightable 'work' puts that 'work' into the public domain except so far as it may be protected by copyright." 191 F.2d at page 598. Beardsley contends that the January, 1939, publica-

tion was one so limited as not to terminate his common law protection as preserved and codified in 17 U.S.C.A. § 2.[5]

The facts developed below indicate that in January, 1939, Beardsley had a supply of 100 sets of the forms which later were included in his copyrighted pamphlets. An unspecified portion of these were distributed to prospective customers, such as corporate officers and surety companies, for their consideration. Judge Palmieri found that this distribution was one made to a "limited group" as was "natural" since the pamphlet was of limited interest. He also found that Beardsley had not proved his claim that the distribution had been made on condition that it [151 F.Supp. 39.] "could not be shown to others and had to be returned." He further found that any interested party could obtain a copy and that Beardsley desired to stimulate an interest in his plan. There was no charge for the forms or plan. If adopted, Beardsley wrote in the pamphlet, he would "naturally expect to be permitted to arrange the bond." In early 1939 three companies adopted the plan and began to use the forms. On September 30, 1939, 500 pamphlets were printed and for the first time a copyright notice was affixed. In 1945 the copyright was registered, with September 30, 1939 listed as date of publication.

What are the legal criteria to be applied to these facts? One of the best and most concise distinctions between general and limited publication is found in White v. Kimmell, 9 Cir., 193 F.2d 744, 746, certiorari denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357, where it is said that a "publication which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, and without the right of

---

4. In this opinion, at page 598, Judge Hand shows that the loss by publication of a common law copyright may more accurately be designated as a forfeiture than an abandonment.

5. Title 17 U.S.C.A. § 2.
   "§ 2. *Rights of author or proprietor of unpublished work*

   "Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor."

diffusion, reproduction, distribution or sale, is considered a 'limited publication,' which does not result in loss of the author's common-law right to his manuscript; but that circulation must be restricted both as to persons and purpose, or it can not be called a private or limited publication." 193 F.2d at pages 746–747.

In American Tobacco Co. v. Werckmeister, 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208, the Supreme Court stated that as a prerequisite of (general) publication "there must be such a dissemination of the work of art itself among the public as to justify the belief that it took place with the intention of rendering such work common property." 207 U.S. at pages 299–300, 28 S.Ct. at page 77. See also Keene v. Wheatley, 14 Fed. Cas. 180, 191, No. 7644, and Werckmeister v. American Lithographic Co., 2 Cir., 134 F. 321, 68 L.R.A. 591, and the other cases cited in White v. Kimmell, 94 F.Supp. 502, at pages 504–506, the opinion in which on the appeal, *supra*, [193 F.2d 746.] was stated to comprise a "concededly accurate survey of the judicial precedents relating to limited publication."

Beardsley's reliance upon American Visuals Corp. v. Holland, 2 Cir., 239 F.2d 740, and Hirshon v. United Artists Corp., 100 U.S.App.D.C. 217, 243 F.2d 640, is misplaced. The significance of those cases lies in the recognition that "publication" may more readily be found if the issue is whether the copyright statute has been complied with than if forfeiture of common law rights is involved. Cases decided under the statutory requirement of publication are not reliable precedents on which to decide whether a common law forfeiture has occurred. That teaching we have followed here.

In the light of those of Judge Palmieri's findings restated above, which are not attacked on appeal, we reach the same conclusion as he reached: the distribution was not limited by Beardsley as to persons or as to purpose. The only limitation was that attributable to a lack of general interest in the highly specialized subject-matter of the plan. Beardsley wanted to reap the business which might be expected from the use of the plan and this first publication was made to further that objective. In legal contemplation it was a general publication which forfeited Beardsley's right to a copyright.

## Miscellaneous

■ Judge Palmieri was right in dismissing Beardsley's counterclaim for unfair competition. He found that Continental "has taken great pains to avoid any possible suggestion that its plan had anything to do with Mr. Beardsley's plan." Indeed, Beardsley does not rely on "palming off" or confusion among customers. Instead, he bases his claim on recent trends in New York law. See, e. g., Henry Glass & Co. v. Art-Mor Togs Inc., Sup., 101 N.Y.S.2d 538, and cases cited therein. As to this we have little to add to the thorough and scholarly opinion of Judge Palmieri. After publication Beardsley's sole protection derived from the copyright statutes in the absence of which complete copying would have been permissible if not followed by "palming off." This rule is well stated in Miller v. Goody, D.C.S.D.N.Y., 139 F.Supp. 176, 187, on a point which we affirmed although reversing the disposition on other grounds. Shapiro, Bernstein & Co. v. Goody, 2 Cir., 248 F.2d 260, 267–268, certiorari denied 78 S.Ct. 536.

If state law has any relevance in this area [6] it is not necessary to decide whether the controlling law is that of Illinois or of New York. In Illinois, "palming off" or "public confusion" is required. Lady Esther, Ltd. v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6. See also Independent Nail & Packing Co. v. Stronghold Screw Products Inc., 7 Cir., 205 F.2d 921, 926, certiorari denied 346 U.S. 886, 74 S.Ct.

---

6. See Huber Baking Co. v. Stroehmann Bros. Baking Co. et al., 2 Cir., 252 F.2d 945, footnote 4.

138, 98 L.Ed. 391. The absence of these elements here required dismissal of the claim. If New York law controls, Judge Palmieri's well-founded finding that "there is not a shred of evidence indicative of a belief that Continental was being helped by Mr. Beardsley's business reputation" together with an absence of "palming off" would preclude recovery. See cases cited in opinion below, 151 F.Supp. at page 44, footnote 67.

■ Judge Palmieri—rightly, we hold—also dismissed Continental's claims for unfair competition and antitrust violation for lack of proof. It is true that the record amply demonstrates Beardsley's efforts, substantially successful at least in the New York field, to use his copyright to acquire a monopoly of the business arising from these forms. The main lever was the threat of infringement proceedings. Nevertheless, as our opinion indicates, Beardsley's claim as to copyrightability was valid and his claims as to infringements were not deceitfully and unreasonably made. We find he has done nothing actionable. It follows that an accounting was properly denied.

We also think that Judge Palmieri was well within his discretion in not awarding attorneys' fees to Continental. 17 U.S.C.A. § 116.

### Conclusion

Judge Palmieri, on the ground of non-copyrightability of all forms, granted an injunction which forbade Beardsley from asserting the claim that any of his forms were copyrighted. Judge Palmieri further supported this injunction as to the forms appearing in the Beardsley pamphlet by a finding that the copyright as to those forms had been forfeited.

Our disposition of this case requires that the injunction be modified. Since we affirm Judge Palmieri's determination of forfeiture of copyright on the forms in the Beardsley pamphlet, the injunction as to those forms was proper. But since we held that in general insurance forms are copyrightable, the injunction should be modified so as to extend no further than to the forms included in the forfeiture as determined by Judge Palmieri. Although Continental contends that certain other forms (waiver of probate bond and mail loss bond form) were drawn into issue in this case by Beardsley and that as to these forms also copyrights have been forfeited, the factual issues concerning these other forms were not determined by Judge Palmieri. Nor did Continental move below for additional findings to cover these issues. Consequently, these other forms are not properly includible in the injunction.

Modified and affirmed.