**Jeff S. BRIGGS**

v.

**NEW HAMPSHIRE TROTTING AND BREEDING ASSOCIATION, INC., Louis Smith, Vice-President, Kenneth F. Graf, Clerk and Pic-Six, Incorporated, Kenneth F. Graf, President.**

Civ. A. No. 2108.

United States District Court
D. New Hampshire.

Dec. 29, 1960.

Jeff S. Briggs pro se, for plaintiff.

McLane, Carleton, Graf, Greene & Brown, Kenneth F. Graf, Manchester, N. H., for defendant.

CONNOR, District Judge.

Plaintiff in this action seeks damages and a permanent injunction restraining the defendants from infringing plaintiff's horse racing plan and betting cards because of an alleged violation of copyright and unfair competition.

The defendants move to dismiss in accordance with Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S. C.A., in that the complaint fails to state a cause of action, and particularly on the ground that the plaintiff has no copyrightable material.

All relevant facts having appeared either by exhibit or brief, the case can be disposed of on the merits on the motion to dismiss.

Assuming all the facts alleged by the parties to be true, plaintiff is the author of a brochure entitled "The Fabulous 4–7 The Incomparable 5–9 Big Bonus Pari-Mutuel Wagering Selections," which included cards used by the betting public which could be sorted on I.B.M. machines. The brochure describes a betting system whereby patrons selected winning horses for each of the seven consecutive races, from the second through the eighth race. The money from these bets was placed in a pool which was distributed among those selecting the largest number of winners. The customers punched holes in the cards which were then processed through I.B.M. machines. Plaintiff apparently claims that he is entitled to the exclusive use both to the "4–7" or "5–9" plan or system of parimutuel betting and also to the method of processing the cards through I.B.M. machines. Plaintiff copyrighted the brochure and cards in March, 1959.

The defendants in November, 1959, at Rockingham Park, Salem Depot, New Hampshire, introduced a similar system of betting known as "Pic-Six," in which customers attempted to select the largest number of winners in the last six races. A brochure entitled "Pic-Six" and "Pic-Six" wagering cards were distributed to the public and winning cards were selected through I.B.M. machines.

On April 15, 1956, prior to the date of plaintiff's copyright, a system of betting known as "5–10" was introduced at Caliente Track in Tijuana, Mexico, in which persons selecting the most winners from the fifth through tenth races were awarded the pool. The betting cards used were processed by hand rather than by I.B.M. machines.

From these facts, it is clear that the motion to dismiss should be granted.

The starting point is the case of Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841. There, plaintiff copyrighted a book, "Selden's Condensed Ledger," the object of which was to explain a particular system of bookkeeping. The question at issue was whether exclusive property in a system of bookkeeping could be claimed by copyrighted book in which that system is explained. In answering in the negative, the court distinguished between a publication describing a plan, system, or method, and the actual use or performance of the plan, system, or method. While the former is protected by copyright, the latter is not.

The first circuit in a case very similar to the present one (Affiliated Enterpris-

es, Inc. v. Gruber, 1 Cir., 86 F.2d 958, 960) was faced with a lottery plan known as "Bank Night" which was originated by the plaintiff and licensed to motion picture theaters. Under the plan, persons registered in the theater, and placed their cards in a receptacle from which were drawn winners who were given prizes. Plaintiff published a plan of instructions for this system and brought suit for infringement of copyright and unfair competition because of defendant's similar system known as "Parlay Cash Night."

In denying relief, the court held that, under the Copyright Act, 17 U.S.C.A. § 1 et seq., the lottery system could not be copyrighted. The court felt that since the plan was disclosed to the public it became public property and the fact that it had been made popular by advertising and the expenditure of effort, time, and money did not alter the situation.

Although the court based its decision on the idea that a "system" is not a "writing" protected by copyright laws, the case might have been disposed of on the idea that the system was so elemental and simple as to be in the public domain and hence not copyrightable under section 8 of the Copyright Law. ("No copyright shall subsist in the original text of any work which is in the public domain.")

The many cases which have held that games, sports, and similar systems and plans are not copyrightable seem to spring from the old Baker v. Selden case, supra.[1] But that case made a clear distinction between writings describing plans, methods, or systems, and the plans or systems themselves. The former were subject to copyright, the latter, if at all, to patent protection. The court gave as illustrations of the latter such processes as the construction of ploughs or watches, and the application of colors for dyeing. These processes are clearly patentable.

But if games, sports, and similar systems and plans are neither copyrightable nor patentable, then there is a hiatus in the law which unjustly fails to offer protection to original inventors.

In this field, the distinction should be drawn not between "writings" and "systems," but between original, complex, unique systems, and elementary, ordinary systems. The critical test is whether the plaintiff is entitled to protection for his own original, creative work, or whether he is to be given a monopoly for ideas which are common and ordinary.

Another important test is the extent to which the sport or game is performed. The game of baseball, for instance, though its conception involved a large degree of original and creative thought, is so universally played that protection of the copyright in one person would unfairly hinder the public interest.

If the copyright law can protect dramas, as it does in section 1(d), there is no reason why it cannot protect certain forms of public presentations in the form of games or sports involving activity rather than mere words. It is a question of drawing a line through the spectrum at one end of which is the copyrightable television drama, at the other the T.V. quiz program involving merely doubling the prize money after each correct answer. In between are various sorts of plans, systems, and games involving varying degrees of originality, imagination, and detail.

In the present case, the action should be dismissed in part for the legally necessary reason that the statutes and court decisions give no protection by copyright to sports, games, or similar systems as distinguished from publications describ-

1. For cases in this area, see: Aldrich v. Remington Rand, Inc., D.C., 52 F.Supp. 732; Alfred Bell & Co. v. Catalda Fine Arts, Inc., 2 Cir., 191 F.2d 99; Seltzer v. Corem, 7 Cir., 107 F.2d 75; Affiliated Enterprises, Inc. v. Gantz, 10 Cir., 86 F.2d 597; Guthrie v. Curlett, 2 Cir., 36 F.2d 694; American Broadcasting Co. v. Wahl Co., D.C., 36 F.Supp. 167; Russell v. Northeastern Pub. Co., D.C., 7 F.Supp. 571. But see: Continental Casualty Co. v. Beardsley, 2 Cir., 253 F.2d 702.

ing them.  Another reason for dismissal is that the sport here involved is so elementary and ordinary that it is in the public domain and to afford protection would be to give to the author a monopoly way out of proportion to the originality and creativity involved.  A similar betting system was in use at Tijuana, Mexico, prior to the date of plaintiff's copyright.  The plan involved here is merely a larger variation of the "daily double." It involves no more originality than a plan permitting picking the horse that comes in fourth.

Even though the plaintiff was the first to use I.B.M. machines in processing the cards, this idea should afford no protection.  One would hardly grant to the first person who used a typewriter in business the exclusive right to send typewritten letters.

An order will be entered granting the motion and dismissing this action with costs to the defendants.