**HARCOURT, BRACE & WORLD, INC., Plaintiff,**

v.

**GRAPHIC CONTROLS CORPORATION, Defendant.**

**No. 68 Civ. 4035.**

United States District Court, S. D. New York.

March 24, 1971.

As Amended May 12, 1971.

On Motion for Reconsideration and Clarification July 27, 1971.

———◆———

Linden & Deutsch, New York City, for plaintiff; David Blasband, Frederick F. Greenman, Jr., New York City, of counsel.

Amster & Rothstein, New York City, Kegan, Kegan & Berkman, Chicago, Ill., for defendant; Esther O. Kegan, Chicago, Ill., George Gottlieb, New York City, of counsel.

LASKER, District Judge.

Both parties here seek summary judgment and present the court with a novel and difficult question of law: Are printed answer sheets, created for use in conjunction with student achievement and intelligence tests and designed to be corrected by optical scanning machines, the proper subject of copyright?

For the reasons set forth in the discussion below, we hold that such answer sheets are subject to the protection of the Copyright Act.[1]

1. As discussed below, the measure of protection resulting from the determination that answer sheets may be copyrighted is narrow. The requirements of optical scanning machines are fixed, and severely limit the range for originality in each design of an answer sheet. For this reason, answer sheets may be substantially the same in appearance even when independently created.

## THE MOTIONS HERE PRESENTED

Defendant moves under Rule 56(b) of the Federal Rules of Civil Procedure for summary judgment on the first count of plaintiff's amended complaint and the first count of the counterclaim, which together raise questions of the copyrightability and infringement of certain answer sheets. Defendant urges (a) that the answer sheets were not subject to copyright, and (b) that even if they were, defendant's answer sheets were of independent design and not copies.

Plaintiff opposes defendant's motion for summary judgment, but urges that "there is no issue as to any material fact which would prevent the grant of summary judgment for plaintiff * * * on the complaint and on both counterclaims." (Plaintiff's Memorandum of Law, filed June 15, 1970, at pp. 15–16).

Thus plaintiff contends that summary judgment is appropriate at this time in its favor on both of the defendant's counterclaims, which sought (1) a declaratory judgment under 28 U.S.C.A. § 2201 and 28 U.S.C.A. § 1338(a) that the answer sheets were not proper subjects of copyright protection, and (2) that plaintiff be enjoined from violating the antitrust laws under 15 U.S.C.A. §§ 15 and 26 by tying the sale of blank answer sheets to its examination booklets, and by conspiring with the manufacturers and suppliers of optical scanning services to refuse to provide school districts with competitive bids for printed answer sheets or scoring them. Plaintiff also seeks summary judgment on the second count of the complaint, as well as the first which, in any event, must be determined by virtue of defendant's motion. The second count, brought pursuant to 28 U.S.C.A. § 1338(b), alleges that defendant copied plaintiff's answer sheet, produced an inferior sheet, and thereby damaged plaintiff's examinations and unfairly appropriated the benefits of plaintiff's research and expenditures in preparing its own answer sheet.

## FACTS

The plaintiff publishes a large number of educational and psychological tests; among these are the Stanford Achievement Test ("SAT") and the Otis-Lennon Mental Ability Test ("Otis-Lennon") taken by school children across the United States every year in some 8,000 school districts. These tests have been repeatedly revised and refined over the years since they were first issued, and this effort has required a substantial investment on the part of the plaintiff.

Furthermore, the decision that answer sheets may be separately copyrighted does not necessitate a finding that the sheets are integrally tied to the protection of the test booklet. An answer sheet could conceivably be created without reference to a test booklet and for use with any number of examinations.

The lack of effective protection even when copyrights have been granted has been pointed to as a major shortcoming of the Copyright Act, 17. U.S.C.A. § 1 et seq. See, e. g., Breyer, "The Uneasy Case for Copyright: A Study of Copyright in Books, Photocopies, and Computer Programs," 84 Harv.L.Rev. 281, 347–8 (1970):

"The fact that creators of many generally usable programs [or, as in the instant case, answer sheets] can now recover their costs after only five or ten sales suggests that this problem [of recovering development expenses] may become significant. Further, difficulties in determining whether one program is a 'copy' of another may make protection difficult for courts to administer. On the one hand, a court that holds trivial variations sufficient to avoid liability would risk emasculating the law. On the other, a court too ready to find 'copying' (one, for example, that might predicate liability on 'substantial similarity' plus 'access to the copyright owner's work') may lead program creators to avoid using even the algorithm of another's program, to write new programs in unusual ways to lessen the risk of 'similarity,' or to make 'similarity searches' through program libraries to which they have had access. One suspects that skillful allocations of burdens of proof may lessen the temptation to engage in these wasteful activities, but one cannot be certain, for neither Congress nor the courts have addressed themselves to the problem."

Originally students taking these examinations entered their responses to the questions posed directly in the test booklet. As optical scanning machines became available, capable of scoring the examinations, separate answer sheets were devised to meet the requirements of the machine used. These separate answer sheets facilitated the grading of the examinations and also saved money for the schools administering the examinations because the same test booklet might be used several times.

As presently administered, a student is now presented with an examination booklet which poses a series of numbered questions or problems in a test booklet. Next to each question is a series of alternative possible answers or responses. Each of these multiple choice responses is individually identified by a given symbol, either a letter or a number. The number of the question is repeated on the separate answer sheet next to a series of slots or spaces in which the student is to indicate his response, each slot being marked with the letter or number corresponding to the alternative possible response appearing in the test booklet. Once the student has recorded his responses by marking the slots relating to the various answers offered with the question, the completed answer sheet is then either graded manually, or viewed by an optical scanning machine which automatically scores the responses on each sheet.

The format of the answer sheets is designed to meet the requirements of the optical scanning machine. These requirements are tailored to the needs of the specific scanning machine to be used —either the "IBM 805" or the "IBM 1230" or the "Digitek" or "MRC" machines. The machine's manufacturer recommends the size and the shape of the paper used for the answer sheet and the size and shape of the spaces in which the student is to record his response (rectangular boxes are most frequently suggested). The manufacturer provides master blanks as models or mock-up sheets for the design of any particular customer's answer sheet, and the grid

area for these response spaces is limited and fixed by the "timing marks" printed on the side of each answer sheet. The maximum number of answer spaces and the distance between the spaces is fixed by the scanning machine's capabilities.

The designer of a given answer sheet fashions the balance of the answer sheet's content within the confines of the master blank just described. He decides where on the page the student shall record such information as his name, the date, his school, teacher, and whatever other specific information may be desired. He determines which of the possible response spaces shall be used and which left blank within the grid area. He directs the placing of the numbers corresponding to the numbered questions in the test booklet, and the letters or numbers indicating the multiple choice responses. Separate sections of the page may be titled to correlate with the appropriate sections in the test booklet. Each answer sheet is given a title and code number by the designer to identify it both to the person administering the examination and to the person responsible for its scoring by means of the optical scanning machine.

In the instant case plaintiff has obtained Copyright Registration Certificates for the editions of its SAT and Otis-Lennon examinations in their various grade levels and alternate forms. Initially, copyright was granted upon submission of the test booklet alone. More recently, including the 1964 SAT and 1967 Otis-Lennon editions here involved, copyright registration has followed multiple submissions consisting of test booklets, separate individual answer sheets, and key scoring guides. Subsequent to this litigation plaintiff has obtained copyright registration for single answer sheets alone, although none of these sheets is among the 10 copyrights allegedly infringed here.

Defendant is a manufacturer of quality charts for recording instruments and a printer of business forms. In 1968, both parties participated in the competi-

tive bidding authorized by the Buffalo Board of Education for the printing and sale of 130,000 answer sheets for use in conjunction with SAT and Otis-Lennon examinations and for scoring on an IBM 1230 optical scanning machine. Prior to its decision to invite bids, the Buffalo Board of Education had purchased all the answer sheets it needed from the plaintiff. On the 1968 bids, plaintiff submitted a figure to the Board of $8,804.55 and the defendant a figure of $2,486.90. No other bids were received, and the contract was eventually awarded to the defendant, although the plaintiff advised both the defendant and the Buffalo Board of Education that in its view plaintiff alone had the right to provide such answer sheets.

Defendant designed its answer sheet on the master form provided for use with the IBM 1230 optical scanning machine. Defendant's designer, John F. Wynne, was provided copies of plaintiff's SAT and Otis-Lennon answer sheets by a representative of the Buffalo Board of Education. He used these sheets as source material in determining the content of defendant's answer sheet, i. e., the placement of response positions, numbers for questions and letters or numbers for responses, name of the examination, instructions for use of the answer sheet with the test booklet, and certain other details.

Defendant also included material different from that of plaintiff's answer sheet in response to requests of the staff of the Buffalo Board. For example, the student was asked to record information relating to his identification and ethnic grouping and qualification for the Head Start Program—which did not appear on plaintiff's answer sheets.

In designing the answer sheets Wynne made no use of the plaintiff's actual test booklets as distinct from plaintiff's answer sheets. He did use an IBM manual containing instructions on how to prepare material for use with its optical scanning machines.

## THE ISSUES

While only the defendant has formally moved for summary judgment, and only as to the first cause of action of the amended complaint and the first counterclaim, nonetheless this court has "authority to grant summary judgment" for the non-moving party "in the absence of a cross-motion for summary judgment" in appropriate circumstances. Local 33, International Hod Carriers, etc. v. Mason Tenders, etc., 291 F.2d 496, 505 (2d Cir. 1961); Time, Inc. v. Bernard Geis Associates, 293 F.Supp. 130 (S.D. N.Y.1968); 6 Moore's Federal Practice § 56.12.

The claims here [2] give rise to three issues to be determined on these motions.

2. The claims emerging from the contentions of the parties are as follows:
   A. The defendant asserts that (1) the answer sheets are not protected because they were never separately and specifically copyrighted; (2) the answer sheets are not a proper subject for copyright protection under the rule of Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879) (implemented in 37 C.F.R. § 202.1), because they are forms conveying no information, and because their format is fixed by the requirements of the optical scanning machine and thus are not the writings of the plaintiff; (3) even if plaintiff's sheets were copyrighted, defendant's sheets are not infringing copies because they were based on the same master blanks provided by the optical scanning machine manufacturer and "[d]efendant had the right to refer to

plaintiff's tests or answer sheets to determine the number of questions and response options in said test and subtests," (Defendant's Memorandum of Law, filed May 20, 1970) they differed from plaintiff's in several essential details, and the ideas contained in plaintiff's answer sheet may be independently expressed in defendant's answer sheet.
   B. Plaintiff argues that it is entitled to summary judgment because (1) the Copyright Office properly registered its answer sheets, of which fact the certificates are prima facie evidence under 17 U.S.C.A. § 209, and the Copyright Office thus indicated that it construes 37 C.F.R. § 202.1 to permit copyrighting answer sheets; (2) the answer sheets are copyrightable because they convey information, "constitute symbolic reproductions of the alternate answer selections which

First, whether the answer sheets here are the proper subjects of copyright; second, whether the plaintiff obtained valid copyrights to its answer sheets; and third, whether defendant infringed plaintiff's copyrights.

For the reasons discussed below we hold that the answer sheets are subject to copyright, that they have been validly copyrighted, and that the defendant has infringed plaintiff's copyrights, although the proof is insufficient to establish the extent of the infringement.[3]

(a) *Copyrightability*

The Copyright Act protects properly registered printed answer sheets created for use in conjunction with student achievement and intelligence tests and designed to be corrected by optical scanning machines.

Under its constitutional authority to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," United States Constitu-

constitute a substantial portion" of the test booklets (Plaintiff's Memorandum of Law, filed June 15, 1970), are a translation of the test booklet questions and answers in a different version (17 U.S.C.A. § 1(b)), have originality and are writings and not blank forms under the rule of Baker v. Selden, supra; (3) in making separate answer sheets the defendant infringed the plaintiff's copyright in its test booklets; (4) the defendant did in fact copy plaintiff's answer sheets in preparing its own; (5) both defendant's counterclaims lack merit, the first being "the identical issue as to copyrightability as the amended complaint" (*Id.*) and the second being without basis since plaintiff's "good faith would furnish a complete defense," citing Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965).

C. Defendant opposes plaintiff's request for summary judgment on all issues; it observes that as moving party it seeks only a "partial" summary judgment on the issue of copyrightability and infringement. As to other issues defendant asserts that there are outstanding issues of fact, and that even if answer sheets were held to be copyrightable it would remain to establish which answer sheets were actually copyrighted. Finally, defendant urges that further discovery is needed as to plaintiff's unfair competition claims and the defendant's own antitrust counterclaim, and that until such discovery is completed a motion for summary judgment ought to be denied.

D. Plaintiff replies that there are no genuine issues as to any material facts and that adequate pretrial discovery has been had.

3. Contrary to the urgings of plaintiff, defendant's second counterclaim alleging violations of the antitrust laws and plaintiff's second count alleging unfair competition are not amenable to decision by summary judgment at this time. The issues raised are not necessarily coterminus with the copyright questions.

(1) The antitrust questions extend beyond the issue of plaintiff's good faith in seeking copyright protection for its answer sheets. Defendant shows that IBM has adopted a policy of filling orders for plaintiff's answer sheets only if the customer states that it will use such sheets solely in connection with the plaintiff's examinations, (Deposition of Roger T. Lennon, April 7, 1969, pp. 87–91), and the discovery has not advanced to the point of revealing why IBM has this policy, what, if any, influence the plaintiff had in its formulation, and what the implications may be as to restraint of trade.

(2) The unfair competition issues necessitate findings of fact as to whether defendant's answer sheets jeopardize the worth of plaintiff's examinations and the norms derived from their administration. The facts as to this issue are in dispute here, and appear far from being adequately developed.

Until pretrial discovery is completed, it cannot be determined whether genuine issues of material fact will emerge as to these causes of action. Smith-Corona Marchant, Inc. v. American Photocopy Equipment Co., 217 F.Supp. 39 (S.D. N.Y.1963). Summary judgment is therefore presently inappropriate, especially where, as here, the plaintiff has not even made a formal motion for it or a motion which specifies that judgment is requested as to these precise issues. Fountain v. Filson, 336 U.S. 681, 682–683, 69 S.Ct. 754, 93 L.Ed. 971 (1949).

tion, Art. 1, § 8, cl. 8, Congress has provided that copyright may be secured for "all the writings of an author." § 4 of the Copyright Act of 1909, 17 U.S.C.A. § 4. Once copyright protection' is established, the holder has "the exclusive right: (a) To print, reprint, publish, copy, and vend the copyrighted work; (b) To translate the copyrighted work into other languages or dialects, or make any other version thereof * * *" 17 U.S.C.A. §§ 1(a), 1(b).

■ The definition of "writings" in § 4 of the Copyright Act is intended to be read expansively, so long as limitations are not fixed elsewhere in the Act. International News Service v. Associated Press, 248 U.S. 215, 234, 39 S.Ct. 68, 63 L.Ed. 211 (1918); Deutsch v. Arnold, 98 F.2d 686, 688 (2d Cir. 1938).

As described above, the answer sheets involved here contain sufficient originality in their design to qualify as writings. To be sure, the area for originality of design is limited by the requirements of the optical scanning machine used. Thus the parameters of the field of creativity for designing of test sheets are defined by the timing marks on the side of the page, the shape and maximum number of response positions and whether they shall be set horizontally or vertically, the weight of the paper and size of the sheet, and the number of lines per inch. However, within these confines the designer may structure the division of the response positions across the page, may ask what information (name, age, date, etc.) the student should record on the face of the answer sheet, may devise the symbolic code indicating what question is being asked and what possible alternative answers slots may be selected, may insert any instruction explaining how to use the answer sheet in conjunction with an examination, may set forth examples illustrating such use, etc. Accordingly, while limited in scope, the area for originality exists. The creation of an answer sheet requires the skill, expertise and experience together with the personal judgment and analysis of the designer or au-

thor. As Mr. Justice Holmes observed, "singularity" may exist in the case of small differences as well as large. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460 (1903). See also Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 102 (2d Cir. 1951). "Therefore a very modest quantum of originality will suffice," Nimmer on Copyright, § 19.2 (1970 Ed.) at 86.

It is, of course, possible for a person independently to design an answer sheet to be used with an optical scanning machine. The format of the sheet might make it equally amenable for usage with any number of examinations, or with only one examination. In each, the original expression would be protected. Indeed, if the answer sheet were even substantially identical to that of another and were the product of an independent creation, that new expression would nonetheless be copyrightable just as would Keats' "Ode On a Grecian Urn" were it rethought anew. Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir. 1936, Judge Learned Hand). *Cf.* Rochelle Asparagus Co. v. Princeville Canning Co., 170 F.Supp. 809 (S.D.Ill. 1959); Barton Candy Corp. v. Tell Chocolate Novelties Corp., 178 F.Supp. 577 (E.D.N.Y.1959); Dunham v. General Mills, Inc., 116 F.Supp. 152 (D.C.Mass. 1953).

Analysis of plaintiff's answer sheets also reveals that they convey information. On their face they inform a reader that they are designed to be the page upon which one records responses to an examination in a certain way; explanations and examples appear in the design of some answer sheets.

■ The sheets, of course, derive additional meaning from and by reference to the examinations with which they are used. Even without such reference, however, the symbols designating questions or response spaces are by themselves an expression which may be protected. As was said in Korzybski v. Underwood &

Underwood, Inc., 36 F.2d 727, 728 (2d Cir. 1929):

> "It may be reasonably contended that complainant's system of symbols, though unaccompanied by any explanation, resembles a table of logarithms, or the text of a book in the language of a savage tribe, known only to the author. It can hardly be doubted that such matters may be copyrighted, even without any accompanying explanation or comment."

Code books have been held to be copyrightable "writings," Hartfield v. Peterson, 91 F.2d 998 (2d Cir. 1937). As Judge Learned Hand put it, there is no reason why codes or words or symbols alone "should not be such [writings] because they communicate nothing [to a particular reader or viewer]. They may have their uses for all that, aesthetic or practical, and they may be productions of high ingenuity, or even genius." Reiss v. National Quotation Bureau, Inc., 276 F. 717, 719 (S.D.N.Y.1921).

■ Since it is concluded that the answer sheets here are copyrightable writings, we need not rule on plaintiff's contention that the letters and numbers indicating questions and multiple choice responses are also copyrightable as "translations" of the examination itself. The answer sheets here, alone, have their own meaning, convey information, involve original creation, have their uses, and are thus "writings" under the Copyright Act. In so ruling we do not accept defendant's argument that answer sheets are merely forms which may not enjoy copyright protection under 37 C.F.R. § 202.1(c), or under the rule of Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879), and Taylor Instrument Companies v. Fawley-Brost Co., 139 F.2d 98 (7th Cir.

1943). The regulations referred to, embodying the rule of Baker v. Selden, supra, provide that forms usable only for the recording of information are not copyrightable. Here, the record indicates that the Copyright Office has registered separate answer sheets for copyright and thus has construed its own regulations contrary to the interpretation urged by the defendant. More significantly, the answer sheets involved here are designed to guide the student in recording his answers; their particular format, in its clarity and convenience, is important to the successful completion of the examination. The expression is peculiar to each answer sheet, and it is this expression which the student reads, independently of the fact that later the completed answer sheet will be scored by an optical scanning machine.

On analysis, therefore, it is evident that the answer sheet is not merely a form upon which information is recorded (as, for example, in the case of the form on which a machine automatically records temperature, Taylor v. Fawley-Brost, supra). The answer sheets here contain a mix of inherent meaning, of information conveyed, and the utility for the recording of responses. There is no clear division between the "explanation" of a system (how to use the answer sheet in taking the examination) and its "use" (using the answer sheet as a form upon which responses are recorded) as appeared to the court in Baker v. Selden, supra. This Circuit, in Continental Casualty Co. v. Beardsley, 253 F.2d 702, 704 (2d Cir. 1958), has held that Baker v. Selden, supra, is "inapplicable" where "language explanatory" of the clearly copyrightable "writing" is "inseparably included" in the writings which constitute the means or usage.[4]

4. The distinction between "explanation" and "use" in any event is an awkward one which has not been reviewed by the Supreme Court in nearly a century. Almost always, as here in the case of answer sheets, "forms" are a mixture of explanation and use. In light of the clear mandate of the Copyright Act to register all "writings," and following Continental Casualty Co. v. Beardsley, supra, 253 F.2d 702, the distinction between explanation and use should be limited to forms which are merely pages for mechanically recording data. See Norton Printing Co. v. Augustana Hospital, 155 U.S.P.Q. 133 (D.C.N.Ill.1967); Nimmer on Copyright § 37.31 at 153 (1970).

Because of the narrowness of the area of originality in answer sheet design, the likelihood that different designers may independently create substantially the same product is enormously greater than the possibility that a kindred spirit of Keats will produce a new "Ode." As this Circuit said in Continental Casualty Co. v. Beardsley, supra, 253 F.2d at 705, there endorsing the discussion in Crume v. Pacific Mut. Life Ins. Co., 140 F.2d 182 (7th Cir. 1944):

> "We realize that such a view leaves little, if any, protection to the copyright owner; in fact, it comes near to invalidating the copyright. This situation, however, results from the fact that the practical use of the art explained by the copyright and lodged in the public domain can be attained solely by the employment of language which gives expression to that which is disclosed."

#### (b) *Plaintiff's Copyright Registrations*

■ Having decided that the answer sheets may be copyrighted, it is demonstrated in the record before us that the plaintiff has obtained valid copyrights for its answer sheets. The Copyright Office issued certificates when answer sheets were submitted separately and has issued certificates for multiple submissions containing answer sheets together with test booklets or other material. When such a set of materials is submitted together, "the degree of protection afforded by the copyright [registration] is measured by what is actually copyrightable" in the materials and not by the entirety of the submission. Dorsey v. Old Surety Life Ins. Co., 98 F.2d 872 (10th Cir. 1938).

■ The certificates of registration issued for answer sheets are "prima facie" evidence of the facts stated therein under the Copyright Act, 17 U.S.C.A. § 209. It is immaterial whether plaintiff submitted answer sheets separately for the first time only after the start of this litigation because the subsequent registration of them by the Copyright Office indicates that the Office consciously decided that the sheets were copyrightable even when they were included in multiple submissions. The defendant has not adduced any evidence to lead us to question the deliberateness of this decision based upon the practice of the Copyright Office, as was the case in DeSylva v. Ballentine, 351 U.S. 570, 578, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). Indeed, in light of the fact that the Copyright Office regards computer programs as copyrightable (see Iskrant, "The Impact of the Multiple Forms of Computer Programs on their Adequate Protection by Copyright," ASCAP Copyright Law Symposium No. 18, at 92, 101–103 (1970)), it appears logical to conclude that the practice and policy of the Copyright Office is consciously to accept answer sheets for registration. This practice and policy and the decision above relating to copyrightability rebut defendant's affidavit of Morton David Goldberg, sworn to May 11, 1970, in which he states that, after examination of the answer sheet (IBM 1230 Answer Sheet for SAT Reading Test Intermediate I, identified as defendant's Exhibit 18 on deposition of plaintiff, by Roger T. Lennon, taken May 22, 1969) which plaintiff deposited with the material registered by the Copyright Office under Certificate No. A 728,247, it is his opinion as an expert in copyright law that if an application had been filed for registration of that answer sheet, separate and apart from any other material, the Copyright Office would not have registered a copyright claim thereon.

#### (c) *Infringement*

The record establishes that defendant has infringed the copyrights of plaintiff's answer sheets. Plaintiff alleges in paragraph 9 of the amended complaint that thirteen of its sheets are infringed; defendant has prepared thirteen answer sheets for use with different forms of plaintiff's SAT and Otis-Lennon examinations.

Uncontested evidence indicates that copies of the plaintiff's answer sheets for all thirteen of these tests were provided

to the defendant's answer sheet designer, John F. Wynne, by Dr. Banks of the Buffalo Board of Education (Deposition of Wynne taken May 21, 1969, at pp. 66–67, 83–84). (See also deposition of Alan M. Singer, Secretary of Graphic Controls Corp., taken April 7, 1969, at pp. 43–46, for identification of the sheets and examinations). Although Wynne testified that he never saw or used copies of the test booklets themselves in the preparation of defendant's answer sheets (Wynne deposition, at p. 15), he used the plaintiff's answer sheet as a "source" for the arrangement and design of defendant's answer sheet (*Id.* at 67, 72–74, 91) and even used some of plaintiff's sheets as a basis for a mock-up or model of his own (*Id.* at 88). He used the master sheet provided for the IBM 1230 optical scanning machine as the foundation for his designs, and was guided in this effort by the IBM 1230 manual (*Id.* at 28, 110). He also followed specific instructions given to him by representatives of the Buffalo Board of Education (*Id.* at 66, 76–79).

Wynne states that he did notice the copyright symbol appearing on plaintiff's answer sheets (*Id.* at 13). He used the plaintiff's answer sheets to determine the number of questions (*Id.* at 69), the arrangement of the response positions and questions on the sheet (*Id.* at 72, 86), the symbols for responses (letters or numbers) (*Id.* at 73, 123), subject matter headings (*Id.*), test titles (*Id.* at 74, 77–79), and certain instructions (*Id.* at 91).

Most revealing as to Wynne's method of design is his description of how the letters "A–H, J, K" were seleced to designate the alternative responses to questions (omitting the letter "I" [i], which might be confused with the number 1). He states that " * * * We took the number of questions from the Harcourt answer sheet and A, B, C, D, E, F, G, H, J, K," Question: "Because those letters, A, B, C, D, E, F, G, H, J, K appeared on the Harcourt answer sheet?" Answer: "Correct." Question: "That's why you put it in your answer sheet. Isn't that correct?" Answer: "Correct." (*Id.* at 124).

This uncontested record establishes defendant's substantial copying of plaintiff's copyrighted answer sheet. To be sure the defendant vigorously argues that answer sheets are not copyrightable because they are forms, and that its answer sheets in any event are "different" and thus not infringements (*Id.* at 39). These contentions do not obviate the fact of copying.

While the record establishes the fact of copying and that infringement has occurred, the extent of infringement is unclear. Although we might infer that Wynne used the same method of design for each of the thirteen sheets, the record leaves genuine issues of material fact open with regard to this question. Accordingly, although it is held that defendant has infringed the copyrights on plaintiff's answer sheets, a determination as to the extent of infringement must await the illumination of further discovery or trial on the merits. No decision as to damages or other relief requested can be rendered on the record as it stands.

A further word is necessary in regard to plaintiff's apparent contention that any answer sheet designed by a person other than the designer of the test infringes the copyright on the test. Summary judgment cannot be granted as to this contention for several reasons. In the first place, the record on this point (as distinguished from the facts relating to defendant's use of plaintiff's answer sheet) establishes that defendant did not make use of plaintiff's test booklet in designing its own answer sheet. Beyond this, however, is the consideration that a determination as to whether the defendant's answer sheets infringe the plaintiff's test booklet is not merely a question of law, but also of fact. While the cases have held that publication of answers to puzzles and tests may constitute infringement, the facts differ here.[5] The defendant has not published

---

5. The situation here is distinguished from instances where an infringer publishes answers to questions previously published in a copyrighted text book, Addison-Wes-

answers but an uncompleted answer sheet. The precise relationship between the answer sheet and the test booklet must be explored before a determination can be made as to whether one infringes the other. The record is inadequate on this point and requires the testimony of witnesses who will be able to clarify this complex and specialized subject.

## CONCLUSION

Defendant's motion for summary judgment on the first count of the amended complaint is denied. Defendant's motion for a declaratory judgment is determined by holding that plaintiff's individual answer sheets are copyrightable. Plaintiff's motion for summary judgment is granted to the extent of holding that plaintiff's answer sheets are copyrightable, have been validly copyrighted, and have been infringed by defendant. Accordingly, the defendant will be enjoined from further infringements of plaintiff's copyrighted answer sheets.

The foregoing constitutes the court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

Submit order on notice.

## On Motion for Reconsideration and Clarification

Presented here is defendant's "Motion for Reconsideration and Clarification" of the opinion of this court filed March 24, 1971. Examination of the issues raised both by this motion and by the proposed order submitted by the plaintiff indicates that clarification is needed, and in the interests of justice is granted. Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 15, 65 S.Ct. 478, 89 L.Ed. 661 (1945).

██ Plaintiff opposes both branches of the motion, arguing that it constitutes an attempt to make a motion to reargue under General Rule 9(m) of this court.

It properly observes that defendant has not complied with the provisions of this rule that such motion must be made within ten days of the filing of the opinion, and that no new facts or controlling decisions of law not treated by the court have been presented. While defendant asserts that it was only by excusable neglect that it failed to make the Rule 9(m) motion, and that "to the extent that this motion may be deemed a motion for reargument pursuant to Local Rule 9(m), defendant requests that the ten day period * * * be extended as required to permit this motion to be entertained," nonetheless it is clear that no new fact or controlling legal principle has been presented. Accordingly, so much of the motion as requests reargument is denied.

Insofar as we are able to judge from defendant's generalized presentation, the points as to which it seeks clarification are the following: (a) a clarification "by an item by item analysis of Plaintiff's answer sheets * * * as to what portions do contain originality or convey information sufficient to create a copyright monopoly"; (b) a clarification of whether the court's ruling that the answer sheets were actually copyrighted precludes defendant from further attack on those copyrights on the grounds that they were fraudulently extended through the re-registration of the same answer sheet in several successive years; (c) the scope of the court's findings of infringement in light of defendant's request that, since "Plaintiff will seek to enjoin Defendant from 'copying' * * * Defendant is entitled to know what is deemed 'copying' within the meaning of any possible court order"; and (c) clarification of the scope of the injunctive relief granted.

### (a) "Item by item analysis"

In the opinion of March 24, 1971, this court expressly found that "[t]he an-

---

ley Publishing Co. v. Brown, 223 F. Supp. 219 (E.D.N.Y.1963), or where answers have been prepared and printed for questions in a copyrighted puzzle contest, Procter & Gamble Co. v. Moskowitz,

et al, 127 U.S.P.Q. 523 (E.D.N.Y.1960). In both those cases it was held, inter alia, that defendants tampered with the purpose and meaning of the copyrighted questions by supplying their own answers.

swer sheets here, alone, have their own meaning, convey information, involve original creation, have their uses, and are thus 'writings' under the Copyright Act." (p. 524). It was further observed that "[b]ecause of the narrowness of the area of originality in answer sheet design, the likelihood that different designers may independently create substantially the same product is enormously greater than the possibility that a kindred spirit of Keats will produce a new 'Ode.'" (p. 525).

Having determined that an answer sheet as a whole is copyrightable, it is not possible to break the whole into separate parts. A given word in Keats' *Ode* is not perhaps copyrightable, but its use in a poetic line would be.

### (b) Plaintiff's Copyrights

In the opinion of March 24th, the court determined that the plaintiff properly submitted, by multiple document deposits, its answer sheets for copyright registration, and that the Copyright Office validly registered the submissions. In so determining, the court necessarily considered defendant's allegations that, if defendant could undertake further discovery or await trial, it might be able to show that plaintiff resubmitted the same answer sheet several times, achieving thereby a "fraudulent extension of copyright terms" which would be "fatal defects to enforcement of a copyright." (Defendant's Memorandum, p. 5). Defendant argued on the motions previously decided that (despite extensive discovery) it lacked facts as to these challenges to the validity of the registrations, and that accordingly summary judgment should be denied.

On the original motion defendant did no more than raise the issue of fraudulent extension as a hypothetical defense which, it argued, it should be given the opportunity to explore. It never produced evidence, nor the inference that such evidence might exist, to support its claims that plaintiff resubmitted the same sheets in successive years.

Defendant has produced on this motion copies of different versions of plaintiff's answer sheets bearing different copyright registration dates. Each sheet apparently is intended for use with a different examination, since each bears distinct and different identification symbols. There is no showing that they are the same sheet resubmitted. Production of this material does not rebut the statutory instruction that the certificates of copyright registration are prima facie evidence of the facts stated therein, including the original creation of each sheet. 17 U.S.C.A. § 209; Nimmer on Copyright § 139.1 (at 602) (1970 Ed.).

In short, no genuine issue of material fact has been raised by defendant's contention either on the original motion or at present. If defendant had evidence, or the basis for believing that such evidence might exist, it should have produced it on the Rule 56 motions. "[M]ere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment. [citing cases]." Engl v. Aetna Life Ins. Co., 139 F.2d 469, 473 (2d Cir. 1943).

### (c) Findings of Copying as Infringement

The opinion of March 24th granted summary judgment, finding infringements of certain answer sheets: "This uncontested record establishes defendant's substantial copying of plaintiff's copyrighted answer sheet." (using the singular "answer sheet" generically in reference to the sheets discussed below and in the original opinion). (p. 526). Extensive citations to the record were given indicating where evidence of copying emerged, largely by admission of defendant's own answer sheet designer. Thus in designing defendant's answer sheet for the plaintiff's Stanford Achievement Test Intermediate I Spelling and Word Study Skills (appearing as Plaintiff's Ex. 4 in final form, Wynne Deposition at 89–90), the defendant actually made a "mock-up using a Har-

court, Brace answer sheet" (Wynne Deposition at 87–88) and made changes directly on the copy of plaintiff's own answer sheet.

Similarly, the record establishes that defendant's "lay-out for an answer sheet" (Plaintiff's Ex. 1; Singer Deposition at 22) was intended for use with plaintiff's Stanford Achievement Test Intermediate I Language Test (Singer Deposition at 32), and that parts of plaintiff's answer sheet for that test (Plaintiff's Ex. 31) were directly copied to create the defendant's sheet (which eventually appeared as defendant's sheet T-4 (Plaintiff's Ex. 7; Singer Deposition at 44)). The parts copied and the methods used to copy them appear throughout the record (Wynne Deposition at 67–71, 72–77, 79, 81, 86, 121). Additionally, the creation of defendant's answer sheet for the Otis-Lennon mental ability intelligence test T-1 (Plaintiff's Ex. 17) was admittedly copied in part from plaintiff's corresponding answer sheet (Wynne Deposition at 71–72, 78, 123–125).

While evidence of copying was clear, the scope and extent of the copying was most unclear. The record is inartfully developed and incomplete, and it was impossible to judge which additional sheets, if any, were copied, or, if any was copied, to what extent.

Accordingly, the degree of copying found was sufficient only to serve as a basis for enjoining further copying. The two general statements in the opinion of March 24, 1971, that on page 525 ("The record establishes that defendant has infringed the copyrights of plaintiff's answer sheets") and on page 527 ("Accordingly, the defendant will be enjoined from further infringements of plaintiff's copyrighted answer sheets"), must be read in connection with the statement at page 526:

"Accordingly, although it is held that defendant has infringed the copyrights on plaintiff's answer sheets, a determination as to the extent of infringement must await the illumination of further discovery or trial on the merits. No decision as to damages or other relief requested can be rendered on the record as it stands."

At page 522 the opinion clearly stated the limited nature of the holding:

" * * * we hold that the answer sheets are subject to copyright, that they have been validly copyrighted, and that the defendant has infringed plaintiff's copyrights, *although the proof is insufficient to establish the extent of the infringement.*" (emphasis added).

Summary judgment was denied as to all allegations of copying other than the instances found here. At trial both parties will have the opportunity to demonstrate which portions of the answer sheets were or were not copied. Then and then only can it be determined what was the precise extent of copying. Similarly, defendant will have its opportunity to establish which parts of its sheets were original creations or were derived from independent sources such as the advice of the optical scanning machine manufacturer or the Buffalo board of education.

### (d) Scope of Injunctive Relief

Having found that certain answer sheets clearly were copied, the court determined that the plaintiff was entitled to limited injunctive relief. 17 U.S.C.A. §§ 101(a), 112. The injunction is only against further copying of plaintiff's copyrighted answer sheets.

The record reveals that defendant, although aware of plaintiff's copyright claims, deliberately sought to produce answer sheets to accompany plaintiff's examinations, used as a major portion of its design methods the direct copying of plaintiff's answer sheets, and vigorously persists in pressing its right so to employ the sheets. As was said in American Metropolitan Enterprises of N. Y. v. Warner Bros. Records, 389 F.2d 903, 905 (2d Cir. 1968):

"The Copyright Act expressly preserves the traditional doctrines of equity when one seeks equitable remedies in a copyright action."

Here, the enjoining of certain acts is the proper remedy and is supported by the

530

record. This relief is expressly provided for in 17 U.S.C.A. § 101(a); it may well be that after trial plaintiff's remedies at law—should it prevail—will be sufficient relief, precluding the need for the additional equitable relief sought in the complaint, such as the rendering up of the sheets for destruction. The remedy afforded on this grant of partial summary judgment is sufficient and appropriate as the record stands. See the grant of such relief in H. M. Kolbe Co. v. Armgus Textile Co., 315 F.2d 70, 75 (2d Cir. 1963); Ideal Toy Corp. v. Fab-Lu, Ltd., 261 F.Supp. 238 (S.D.N.Y. 1966).

Conclusion

The opinion of March 24, 1971, as clarified by this memorandum, is reaffirmed.

Submit order on notice.