NOVELTY TEXTILE MILLS,
INC., Plaintiff,

v.

JOAN FABRICS CORPORATION,
Defendant.

No. 76 Civ. 5753 (HFW).

United States District Court,
S. D. New York.

Jan. 31, 1977.

---

Blum, Moscovitz, Friedman & Kaplan, New York City, for plaintiff, by James K. Silberman, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City and Bell, Seltzer, Park & Gibson, Charlotte, N.C., for defendant, by Floyd A. Gibson, Julian E. Carnes, Jr., Joell T. Turner, Charlotte, N.C., of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

The parties to this action are both manufacturers of upholstery fabrics. Plaintiff

Novelty Textile Mills, Inc. ("Novelty") contends that defendant Joan Fabrics Corporation ("Joan") has infringed upon its design for a "bias" or "argyle" plaid upholstery fabric, which is copyrighted as "Style 253." In this action, Novelty seeks injunctive relief, impoundment and destruction of the allegedly infringing copies and damages and has moved for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining defendant "from manufacturing, producing, publishing, distributing, advertising or selling, offering for sale or otherwise disposing of upholstery fabrics . . . similar to plaintiff's copyrighted Style 253." The court held an evidentiary hearing on January 20, 1977 to consider Novelty's entitlement to preliminary equitable relief and has now concluded that the motion must be denied.[1] The court's findings of fact and conclusions of law, required by Rule 52(a) of the Federal Rules of Civil Procedure, are hereinafter set forth.

Novelty created Style 253 during the latter part of 1975 and first displayed it to the trade in January of 1976.[2] The fabric, manufactured on "Cidega" warp knitting machines, sold well and was delivered to furniture manufacturers in commercial quantities beginning in March of 1976. Several manufacturers exhibited display models of their furniture, upholstered with Style 253 fabric, at a regional furniture trade market held in April, 1976 at High Point, North Carolina.[3] There, Joan's sales and design personnel saw Style 253 and learned that there was a substantial demand for bias plaids among its customers.

Joan's management thereafter determined, in May of 1976, that it too should offer a collection of bias plaid upholstery fabrics. The committee charged with the design of new fabrics was told that it was to avoid any infringement of fabrics manufactured by others.[4] After rejecting several of the committee's proposed designs, Joan published four bias plaid fabric designs, denominated "CK0028," "CK0035," "CK0042" and "Fleetwood," under copyright notices during the summer of 1976. Subsequently, Joan developed a fifth bias plaid design known as "Electra" and discontinued manufacture of CK0035 due to lack of customer response.

Arthur Feinberg, the president of Novelty, first saw Joan's new designs at the High Point Market held during the third week of October, 1976. Sales of Style 253 declined precipitously following Joan's introduction of its new lines. By comparing the volume of sales of Style 253 prior to October, 1976 with that achieved thereafter and adjusting those figures to reflect variations in Novelty's total revenues during each of these periods, Feinberg concluded that Novelty's continuing losses amounted to approximate-

---

1. At the hearing, Novelty also contended that its "Style 256" had been copied by Joan. Style 256 uses a different type of yarn in its background material which, in turn, yields a somewhat different color in the finished product. Since Styles 253 and 256 are alike in all other respects, the court's decision on the instant motion extends to Style 256 as well.

2. New upholstery fabric designs are generally unveiled in January of each year. Thereafter, "square and color lines," consisting of a large fabric swatch in the most attractive color combination and smaller samples showing alternative color possibilities, are sent to furniture manufacturers to assist them in placing their orders.

3. Regional furniture markets are held in several different cities in January, April and October of each year. The High Point Market is one of the more important trade events.

4. Ansin testified that Joan has had an express policy of noninfringement since 1972, when it unknowingly infringed a copyright by copying a fabric design at the request of a customer. With the exception of that instance and the present action, Ansin stated that no competitor has brought suit against Joan for copyright infringement.

At Ansin's request, Joan procured a sample of Style 253 and asked its counsel for an opinion as to the originality of Joan's designs. Ansin said that he took this unusual measure because Novelty's president was both a valued customer of a Joan subsidiary that manufactured knitting machines and, through another corporation in which he had an interest, a major supplier of the yarns used by Joan.

ly $11,000 per week; he attributed all of this sum to the activities of Joan.[5]

In order to prevail on its motion for a preliminary injunction, Novelty must make a "prima facie showing that [its] copyright is valid, that the opposing party has infringed and that the balance of hardships tips decisively in [its] favor." *Deering-Millikin, Inc. v. Quaker Fabric Corp.*, 187 U.S.P.Q. 288, 289 (S.D.N.Y.1975), *citing Rushton v. Vitale*, 218 F.2d 434, 436 (2d Cir. 1955). Indeed, Novelty must show that there is *some* likelihood of irreparable injury, *see American Visuals Corp. v. Holland*, 219 F.2d 223, 224 (2d Cir. 1955), and that monetary damages will not make it whole, *American Fabrics Co. v. Lace Art, Inc.*, 291 F.Supp. 589, 590 (S.D.N.Y.1968).

For the purposes of this motion, and in the absence of any evidence to the contrary, the court must assume since Novelty has shown that it holds a certificate of copyright registration that Novelty's copyright in Style 253 is valid. *Harcourt Brace & World, Inc. v. Graphic Controls Corp.*, 329 F.Supp. 517, 525 (S.D.N.Y.1971). I turn, therefore, to a consideration of the Novelty and Joan designs.

In general, bias plaids are composed of two sets of intersecting diamonds (or boxes), each of which is formed, in knit fabrics, by the proper alignment of two "zig-zag" stripes upon a relatively neutral background material. Depending upon the mix and intensity of the colors employed and the spatial relationships among the stripes and the background, one of the diamond patterns will appear to be predominant.

Style 253 is available in several alternative color combinations known in the industry as "color-ways." Of these, "Cane"

proved to be the most successful, accounting for approximately 75 percent of Style 253's sales to date. Each of the Joan fabrics considered to be an infringement of Style 253 is manufactured in at least one color-way comparable to Cane.[6] Since these color-ways emphasize the features that are common to Style 253 and its alleged copies, the court bases the following discussion and its conclusion that there has been no improper appropriation of Novelty's design upon a comparison of this representative sample of the myriad color combinations available from Novelty and Joan alike.

Clearly, there are similarities among the fabrics. Each uses brown, camel or beige, and beige or off-white yarns on a light-colored background to form a plaid design consisting of intersecting diamonds with an interior dimension of approximately four inches. (At the time the fabrics were designed, this was the maximum possible span on the type of knitting equipment employed by the parties.) Also, in each fabric, one series of diamonds is formed by a stripe which is somewhat broader than the other.[7] Nevertheless, the differences between Style 253 and the Joan fabrics far exceed the similarities.

First, it is readily apparent that the broader stripes in the Joan fabrics are nearly twice the width of their counterparts in Style 253. They are also composed of several distinct yarns separated by either background material or other colored yarns. In contrast, the broader stripes in Style 253 give the appearance of greater uniformity through the use of yarns placed much more closely together.

Second, from apex to apex, the diamonds in the Joan fabrics seem longer in one di-

---

**5.** The accuracy of this estimate is, at best, questionable since it attributes all of Novelty's losses to the activities of Joan and reflects Novelty's sales in areas other than commercial upholstery.

**6.** It is unclear if Novelty considers Electra to be an infringement of Style 253, since it is available only in a greatly different color combination. In any event, the court considers the

differences between Electra and Style 253 to be even more marked.

**7.** Although it is not apparent to the untrained eye, both Novelty and Joan have also used the "design bar" and the "ground bar" of their knitting machinery to "lay in" their patterns, a distinctive method of manufacture not necessitated by the limitations of the equipment employed.

mension and shorter in the other than the comparable spans in Style 253. This results in a more regular, box-like design in Style 253.

Third, where the zig-zag stripes in Style 253 intersect to form an angle of a diamond, they appear to be intertwined, with one stripe passing over the other. This effect is not apparent in any of the Joan fabrics presented to the court.

Fourth, the stripes in Style 253 seem to, and actually do, have greater depth than those which are found in Joan's fabrics.

Finally, Novelty's background material is formed by an ordered progression of "slub" yarns (which vary considerably and unpredictably in breadth along their length) while Joan's fabrics all have a more uniform background design.

■ Novelty correctly observes that an alleged copy need not mirror a copyrighted design in every respect, and that substantial similarity among fabrics is enough to establish infringement. *Comptoir de L'Industrie Textile de France v. Tilbury Fabrics, Inc.*, 189 U.S.P.Q. 442, 443 (S.D.N.Y. 1975). To determine where this standard has been met, the courts have frequently made reference to what is now known as the "ordinary observer" test, which is

> " 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966)." *United Merchants and Manufacturers, Inc. v. K. Gimbel Accessories, Inc.*, 294 F.Supp. 151, 154 (S.D.N.Y.1968).

The ordinary observer should not be equated with the casual observer, however, for general public opinion provides only limited evidence of unauthorized appropriation. 2 Nimmer on Copyright § 143.52 (1976). As Judge Learned Hand noted "one should consider the uses for which the design is intended, *especially the scrutiny that observers will give to it as used.*" *Peter Pan*

*Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (emphasis added).

■ Since Novelty sells most of its upholstery fabrics to furniture manufacturers, the degree of similarity between Style 253 and the alleged Joan copies should be evaluated from the perspective of such individuals or firms.

■ While each of these disparities considered separately constitutes but a slight modification of Novelty's copyrighted design, the field of bias plaids appears to be a "well-ploughed" one,[8] and striking distinctiveness is, therefore, not necessary in order to establish lack of infringement. Any variation beyond the trivial may properly be considered an independent creation. *United Merchants and Manufacturers, supra* at 152. The court finds that each of the differences noted would be apparent to a furniture manufacturer, or for that matter to a consumer seriously contemplating purchase of a couch covered with one or another of the fabrics, and consequently concludes that substantial similarity and therefore copyright infringement has not been shown.

■ The court is also of the opinion that Novelty has failed to show that money damages would not be adequate compensation for any damages incurred should it ultimately prevail on the merits. Indeed, Novelty has already introduced an approximate estimate of its weekly losses arising from Joan's alleged violations of the Copyright Act. Moreover, although Novelty intimates that its reputation will be injured in the event that Joan is permitted to continue marketing its allegedly infringing designs, there is no evidence that there has been any confusion among Novelty or Joan's customers resulting from the availability of the Joan designs. Consequently, it cannot be said that Novelty will sustain any irreparable injury if interlocutory relief is denied.

---

**8.** Arthur Feinberg conceded on cross examination that a bias plaid manufactured by a third party using similar colors but smaller diamonds was *not an appropriation of his copyrighted* design. From this, it is apparent that only a very limited degree of innovation is necessary to avoid a finding of infringement here.

The motion is therefore denied.

SO ORDERED.